CITIZENS BRIDGE CO. et al. v.
GUERRA.

No. 12331.

Court of Civil Appeals of Texas.
San Antonio.

March 5, 1952.

Rehearings Denied May 7, 1952.

Foster, Lewis & Langley, and R. G. Harris, all of San Antonio, Gordon Gibson, Laredo, for appellants.

Truehart, McMillan & Russell, Seeligson, Cox, Patterson & Grant, and J. Burleson Smith, all of San Antonio, J. I. Rhodes, Eagle Pass, for appellee.

W. O. MURRAY, Chief Justice.

H. P. Guerra as plaintiff brought this suit on three promissory notes, each for the principal sum of $5,000 against Citizens Bridge Company, a corporation, as maker and Francis G. Aldridge as Receiver in Bankruptcy of the estate of F. N. Garcia and his unincorporated banking business conducted under the assumed name of Viguera Banking Company, alleging that F. N. Garcia and Viguera Banking Company were liable as endorsers of the three notes.

The receiver filed a plea to the jurisdiction of the District Court of Maverick County. In his first count he asked that the transfer of the three notes in suit by F. N. Garcia and H. P. Guerra be set aside as a preference by a bankrupt and in his second count he sought recovery of double the amount of usurious interest alleged to have been paid by F. N. Garcia to H. P. Guerra. The Citizens Bridge Company filed a plea of non est factum.

The trial court overruled the receiver's plea to the jurisdiction of the court and submitted 8 special issues to the jury to which the jury returned answers. The court thereafter rendered judgment in favor of H. P. Guerra and against Citizens Bridge Company, F. N. Garcia and Francis B. Aldridge, as receiver of the Bankrupt Estate of F. N. Garcia in the principal sum of $15,000, together with interest. The court further rendered judgment in favor of Francis G. Aldridge, Receiver, against H. P. Guerra in the sum of $7,100, as double the amount of usurious interest collected by Guerra and further refusing Guerra the right of set-off as to this recovery. The judgment against the Bankrupt was ordered certified to the Bankruptcy Court.

Citizens Bridge Company and Francis G. Aldridge have presented this appeal. H. B. Guerra has also prosecuted an appeal from that part of the judgment which

is against him. Each appellant has made separate points of error and have filed separate briefs.

The evidence shows that for several years prior to the execution of the three notes in suit, H. P. Guerra had been lending large sums of money to the private bank of F. N. Garcia. Prior to May 7, 1949, Guerra had loaned to Garcia money until F. N. Garcia's total indebtedness to Guerra was approximately $50,000. Guerra had for some time been demanding that this indebtedness be paid, but had ultimately accepted renewal notes extending the time of payment. He had been demanding financial statements from F. N. Garcia, and had complained because the statements he received were not enough in detail and had demanded further statements. On May 7, 1949, H. P. Guerra and his son, Manuel Guerra, made a trip from Roma, Texas, where they lived, to Eagle Pass for the purpose of seeing and discussing matters with F. N. Garcia. May 7, 1949 was on a Saturday and they arrived in Eagle Pass after banking hours, and the Viguera Banking Company had already closed for the day. They went across the river to Piedras Negras where they first visited in the home of Rafael Garcia, a son-in-law of F. N. Garcia, and then in the home of F. N. Garcia. They spent the next day, Sunday, with F. N. Garcia, during which time a discussion was had with reference to the indebtedness. Ultimately Guerra accepted ten notes in the sum of $5000 each in exchange for the notes which he held for a like sum. Among these ten notes were the three notes of the Bridge Company, which are the subject matter of this suit. There is some confusion in the evidence as to just when these three notes of the Bridge Company were executed. Manuel Guerra stated that he noticed the seal of the company was not on the notes, so someone was sent across the river to Eagle Pass and the seal was brought across the river to Piedras Negras and then and there imprinted on the notes. The Citizens Bridge Company was a corporation and the stock was largely owned by F. N. Garcia, his son-in-law, Rafael Garcia, and his cousin, Victoriano Garcia. F. N. Garcia was the president of the company, Rafael Garcia was the treasurer and Victoriano Garcia was the secretary. The three notes were signed by stamping the name of the Bridge Company on them, and then followed the name of Rafael Garcia as treasurer and Homero de los Santos as secretary. Homer de los Santos was the cashier of the Viguera Banking Company, but not the secretary of the Bridge Company, a fact not known to H. P. Guerra at the time. The notes were endorsed on their backs, "Viguera Banking Company, F. N. Garcia, Manager," and also personally endorsed, "F. N. Garcia."

Under date of May 13, 1949, Viguera Banking Company gave Citizens Bridge Company credit for a deposit in its special account of $14,625.00 representing credit for the three notes less interest in the sum of $375.00. The board of directors of the Bridge Company were F. N. Garcia, Rafael Garcia, Victoriano Garcia, E. F. Measels and F. M. Rose. The last three named directors knew nothing of the execution of these three notes until after the Virginia Banking Company had closed its doors and ceased to do business as a going concern.

On May 27, 1949 H. P. Guerra learned that Homero de los Santos was not the secretary of Citizens Bridge Company. He sent J. C. Guerra, a son, to Eagle Pass to find Victoriano Garcia and to secure his signature to the three notes. Rafael Garcia went across the river to Villa Acuna in company with J. C. Guerra where they found Victoriano Garcia and secured his signature to the notes. The name of Homero de los Santos was lined out. The notes were actually delivered into the possession of Victoriano Garcia for his signature and after he had signed them he re-delivered them to J. C. Guerra. He also authorized J. C. Guerra to place the word "secretary" under his signature.

Bankruptcy proceedings against F. N. Garcia, individually and doing business as Viguera Banking Company, were instituted on July 25, 1949, and he was adjudicated a bankrupt by the United States District Court on January 18, 1950.

■ We will first consider appellee H. P. Guerra's counter-point No. One. In his first point appellee H. P. Guerra presents

the contention that the undisputed evidence shows that F. N. Garcia had implied authority to bind the Bridge Company by the execution of the notes sued upon. At the time H. P. Guerra accepted the notes of the Bridge Company in renewal of notes held by him, F. N. Garcia represented to him that he owned 85 per cent of the stock of the Bridge Company and had authority to manage its affairs more or less as he pleased; that he had authority to borrow money for it up to $25,000. F. N. Garcia, his son-in-law, Rafael Garcia and Victoriano Garcia, who is sometime described as his son and sometimes as his cousin, constituted a majority of the board of directors of the Bridge Company. The statement of F. N. Garcia as to his authority would not be binding upon the Bridge Company as establishing the authority of F. N. Garcia as agent for the company, but only shows that Guerra had this information at the time he accepted the notes. When we turn to the other evidence in the case we find that F. N. Garcia had managed the financial affairs of the Bridge Company more or less as he pleased. He had borrowed large sums of money from his own private bank and from other banks and executed notes therefor without any action on the part of the board of directors and in each instance he had filed an annual report showing what he had done and in each instance he had been commended by the board of directors for his efficient conducting of the business affairs of the Bridge Company. It is apparent here that but for the bankruptcy of F. N. Garcia and his private bank the board of directors of the Bridge Company would have in all probability at their annual meeting again praised F. N. Garcia for his efficient managing of the company's business affairs.

The notes in suit were not signed on their face by F. N. Garcia as president of the Bridge Company, but they were signed by the stamped name of the Bridge Company and by Rafael R. Garcia, as Treasurer, and by Homero de los Santos as Secretary, and the corporate seal of the company impressed upon each of these notes. The notes were endorsed both by Viguera Banking Company and F. N. Garcia.

It was not necessary for these notes to be signed by F. N. Garcia as president of the Bridge Company if he had authority to borrow money for the company he could have the notes executed in any manner that he saw fit. It is true that Homero de los Santos was not in fact the secretary of the Bridge Company, but this was not known to H. P. Guerra at the time he accepted the notes. F. N. Garcia put his approval upon these notes as executed by his signed endorsement. In Oquendo v. Federal Reserve Bank of New York, 2 Cir., 98 F.2d 708, 710 the court said:

> "The record does not disclose who did sign the plaintiff's name. However, it must have been done either by Rabinow himself or by some one whose act he ratified and adopted by writing his name under the purported endorsement and by depositing the check in his account with the Midwood Trust Company."

The situation here is largely governed by what is said in Hildebrand on Texas Corporations. p. 586.

> "Express authority may be shown not only by an explicit resolution of the board of directors, but by their conduct. If by acquiescence, the directors virtually abdicate and permit the manager or president to dominate and conduct the business of the corporation without interference on their part, such officer has express authority co-extensive with the authority of the directors to bind the corporation. As the agent has express authority a third party dealing with such an agent need not show that he had notice of such conduct on the part of the directors before he dealt with the agent of the company. However, as we have seen, if the third party bases his right to recover against the company on the ground of estoppel, he must show that he had notice of the acts of the directors before he dealt with the agent."

Under the circumstances that exist in this case F. N. Garcia had authority to execute the notes of the Bridge Company. They were supported by the consideration of a credit in the Viguera Banking

Company and the Bridge Company's plea of non est factum must fail. We sustain appellee Guerra's first counter-point to the effect that F. N. Garcia had power to execute the three notes of the Bridge Company sued on herein.

The above holding renders it unnecessary to pass upon the question as to whether these notes were later ratified by the signature of three of the five directors of the Bridge Company.

We now come to a consideration of the points raised by Francis G. Aldridge, Receiver of the bankrupt estate of F. N. Garcia.

Appellant Receiver's first point is that the district court of Maverick County was without jurisdiction to hear this case in so far as it was against him as such Receiver. We overrule this contention. It it quite true that ordinarily a bankruptcy court has exclusive jurisdiction over provable claims against the estate of a bankrupt but here we have notes of the Bridge Company in the possession of H. P. Guerra. The estate of F. N. Garcia if liable at all on these notes is liable as an endorser. The subject of this suit is therefore property not in the possession of the receiver. The suit involves parties not subject to the jurisdiction of the Bankruptcy Court. The only way the issues here involved can be settled without a multiplicity of suits is for the controversy to be adjudicated in a court having jurisdiction of all of the parties. Furthermore the Receiver has filed a cross-action seeking to recover the possession of the notes from H. P. Guerra and also seeking to recover from him a penalty for the collection of usurious interest. The judgment here decrees a recovery in the Receiver's favor of the sum of $7100.00 as such penalty. The suit was filed on December 12, 1949, before F. N. Garcia had been adjudged to be a bankrupt. Under such circumstances the district court of Maverick County had jurisdiction of this cause. Wright v. Kinsel, Tex.Com.App., 52 S.W.2d 77; Shield Company, Inc., v. Cartwright, Tex.Civ.App., 172 S.W.2d 108, affirmed, 142 Tex. 324, 177 S.W.2d 954; Elwood Grain Co. v. Walker Grain Co., Tex.Civ.App., 254 S.W. 223; Connell v. Walker, 291 U.S. 1, 54 S.Ct. 257, 78 L.Ed. 613; Kingsbury v. Waco State Bank, 30 Tex.Civ.App. 387, 70 S.W. 551; Chase v. Farmers' & Merchants' National Bank of Baltimore, 3 Cir., 202 F. 904; Moore v. Joseph, Tex.Civ.App., 40 S.W.2d 948; In re Vadner, D.C., 259 F. 614; Gardner v. Planters' National Bank, 54 Tex.Civ.App. 572, 118 S.W. 1146; International-Great Northern Ry. Co. v. Lucas, Tex.Civ.App., 123 S.W.2d 760; International G. N. Ry. Co. v. Acker, Tex.Civ. App., 128 S.W.2d 506.

Appellant, Receiver, next contends that the jury's answer to question No. 7 to the effect that on or about May 8, 1949, H. P. Guerra did not have reasonable cause to believe that F. N. Garcia was insolvent should be set aside as being against the great weight and preponderance of the evidence. We overrule this contention. It is true on or about May 8, 1949 F. N. Garcia was indebted to H. P. Guerra in the sum of $50,000, that Guerra had been demanding from time to time that this indebtedness be paid and had been reluctantly renewing the same for short periods of time. Guerra had been demanding financial statements and either did not receive them or the ones received by him were not satisfactory in that they did not go sufficiently into detail and he had written for more detailed financial statements. Originally this indebtedness bore interest at 6% but was increased to 8% then to 10% and finally to 12%. On May 7, 1949, H. P. Guerra held two notes of Viguera Banking Company for $15,000 and $15,175, respectively, both due May 25, 1949. He also held a note of Harineras Unidas del Norte (a Milling Company) for $10,000 due June 30, 1949, and note of Crystal Ice Factory for $10,000 due June 11, 1949, all endorsed by F. N. Garcia. None of these notes were past due on May 7, 1949, but H. P. Guerra and his son, Manuel Guerra, decided to make a trip to Eagle Pass and Piedras Negras to discuss matters with F. N. Garcia. They spent considerable time going over matters with F. N. Garcia, and ultimately accepted the three $5000 notes of the Bridge Company which are herein sued upon in lieu of a note for

a like amount of the Viguera Banking Company. Both H. P. Guerra and his son, Manuel, testified in effect that F. N. Garcia on this occasion told them of his great wealth and convinced them that he was solvent. In this connection Manuel Garcia testified as follows:

"While we were riding around that Sunday morning in Piedras Negras, he told us he had just completed a very successful operation across the river with the Banco Fronteriza, I believe was the name he gave us; I don't think he named the amount of money he had made in the transaction, but he indicated to us that he would still be active as president of that bank; and furthermore, in a few days he had just made some eighty some thousand pesos in exchange on Mexican money. Mexican money was fluctuating quite a bit in those days. He further indicated to us, and showed us some property that he has right out Piedras Negras, where he sells lots; he told us that he valued that property at one million pesos; and further said the Harineras Unides de Norte, the flour mills across the river, were worth-that, he owned practically all the stock in those, and that the stock he owned was worth one million pesos and we—in the course of the conversation, for our information, we asked about the different business, and he also indicated to us that he owned eighty-five per cent of the Bridge Company stock on the American side, and practically all, if not all, on the Mexican side, and that he also owned an ice plant which, I believe, Rafael told us was worth one hundred thousand pesos or over; and that he also owned the electric service in Piedras Negras; the Lines—that he was buying power from the American side, and he indicated that that alone made upwards of about thirty thousand pesos a month, and that he had just completed a new line, and I believe he said he had put in a quarter of a million pesos in fixing those lines up from a new line he took across the river. Oh yes, he also mentioned the ranch he had bought from a lady named Hardie, I believe, and that he had bought it for $100,000, and that he had paid about $20,000 on that at a very low rate of interest; I don't recall the rate, but I think it was three per cent. In other words, from all indications, and from a financial statement he once took to us, his net worth was about four million pesos. I believe that was all. Oh yes, at that time we asked Rafael Garcia concerning the Crystal Ice Factory, and he said it was clear."

The testimony of both Manuel Guerra and H. P. Guerra was corroborated by F. N. Garcia. The evidence is sufficient to support the jury's answer to special issue No. 7 and the same is not against the great weight and preponderance of the evidence.

What we have heretofore said renders the other points presented by the Receiver immaterial and they are therefore overruled.

This brings us to a consideration of the points presented by H. P. Guerra as a Cross-Appellant. As heretofore pointed out on May 8, 1949, F. N. Garcia was indebted to H. P. Guerra in the sum of approximately $50,000 evidenced by a number of promissory notes all endorsed by F. N. Garcia. On that date H. P. Guerra surrendered three notes and received in their place ten notes each for $5000 signed by different concerns, but all endorsed by F. N. Garcia. In this transaction H. P. Guerra received certain sums in cash which the Receiver contends he was paid as interest and Guerra contends was paid as discount. In this connection the court submitted the following issue No. 8 to the jury to-wit:

"Question No. 8: Do you find from a preponderance of the evidence that defendant, F. N. Garcia, paid $3250.00 on or about May 8, 1949 to Plaintiff, H. P. Guerra, as interest? To which the jury answered Yes."

This issue was followed by a definition of the word interest.

H. P. Guerra's special requested issue which was refused by the court reads as follows:

"Do you find from a preponderance of the evidence that in the transaction

by and between the Plaintiff, H. P. Guerra, and the Defendant, F. N. Garcia, on or about May 8, 1949, the said Guerra was extending an indebtedness of the said Garcia to the said Guerra?"

Rule 279, Texas Rules of Civil Procedure provides that only controlling issues shall be submitted to the jury. The issue submitted was the controlling issue which was whether the $3250 was paid as interest. The issue requested by Guerra was only an evidentiary issue and was properly refused.

Cross-Appellant, Guerra, next complains because the court did not allow him to set off the recovery by the Receiver of $7100 against the amount awarded to him against the bankrupt estate of F. N. Garcia. This point is well taken and is sustained. There is no reason why Guerra should not be allowed to simply credit this amount on the amount which he is recovering. Under our practice such set-offs are allowed. 11 U.S.C.A. § 108, sub. a; American Surety Co. of New York v. Alamo Iron Works, Tex.Civ.App., 29 S.W.2d 493; Cutler v. Glenn, Tex.Civ.App., 81 S.W.2d 1050; Rosetti v. Lozano, 96 Tex. 57, 70 S.W. 204; Yonack v. Emery, Tex.Com.App., 13 S.W.2d 667, 70 A.L.R. 684; Art. 5073, Vernon's Ann.Civ.Stats.

The judgment will be modified so as to offset the amount of the judgment awarded to the Receiver against that awarded to H. P. Guerra, and as thus modified the judgment is affirmed.

Modified and Affirmed.

On Motions for Rehearing.

Appellant Citizens Bridge Company has filed a motion for a rehearing herein, and after careful consideration it is overruled.

Appellant Francis G. Aldridge, Receiver of the Bankrupt Estate of F. N. Garcia, has also filed a motion for a rehearing. He contends, among other things, that we were in error in allowing appellee, H. P. Guerra, to set-off the judgment of the Receiver against the judgment which Guerra recovered from the Receiver. In support of this contention we are cited McCollum v. Hamilton National Bank, 303 U.S. 245, 58 S.Ct. 568, 570, 82 L.Ed. 819. In that suit the Hamilton National Bank was sued by the Receiver of a bankrupt estate to recover the penalty provided for by Revised Statutes, § 5198, 12 U.S.C.A. § 86 for collecting interest at a higher rate than allowed by Section 5197, 12 U.S.C.A., § 85. The bank answered by denying liability and by cross-bill alleged that the bankrupt was indebted to it and asked for a set-off in the event the receiver should be allowed to recover. The court said, "The liability can only be enforced in an action 'brought specially and exclusively for that purpose—where the sole issue is the guilt or innocence of the accused, without the presence of any extraneous facts which might confuse the case.' Barnet v. Muncie Nat. Bank, 98 U.S. 555, 559, 25 L.Ed. 212, [213]." And the Court goes on to say:

> "One paying a national bank usurious interest and entitled to enforce the penalty may not recover it by way of set-off in a suit brought upon his note to the bank. Haseltine v. Central Nat. Bank, 183 U.S. [130], 132, 137, 22 S.Ct. [49], 50, 46 L.Ed. 118, [120]; Barnet v. Muncie Nat. Bank, supra; Driesbach v. Second Nat. Bank, 104 U.S. 52, 26 L.Ed. 658; Stephens v. Monongahela Nat. Bank, 111 U.S. 197, 4 S.Ct. 336, 28 L.Ed. 399."

It is clear that if the rule laid down in the above cases had been followed here the Receiver would not have been permitted to seek a recovery of the penalty prescribed for usury in a cross-action, but would have been required to sue for such penalty in an action "brought specially and exclusively for that purpose,—where the sole issue is the guilt or innocence of the accused, without the presence of any extraneous facts which might confuse the case."

However, this is not a claim against a national bank for the penalty provided for in Section 5198, 12 U.S.C.A., § 86, but it is a cross-action by a receiver against an individual for the penalty provided for in Article 5073, Vernon's Ann.Civ.Stats. The Receiver is the one who brought his claim into a suit against him for judgment upon notes held by appellee. The Receiver could

have avoided the matter he now complains of by bringing a separate suit for the usury penalty.

We have carefully considered appellant Receiver's motion for a rehearing and the same is also overruled.