CITIZENS BRIDGE COMPANY ET AL. V. H. P. GUERRA.

No. A-3677. Decided April 22, 1953.
Rehearing overruled June 3, 1953.
(258 S. W. 2d Series 64)

362

*Foster, Lewis & Langley* and *Ralph G. Langley,* all of San Antonio, for Petitioner, Citizens Bridge Company, *Gordon Gibson,* of Laredo, for petitioner, Francis G. Aldridge.

The Court of Civil Appeals erred in holding as a matter of law that the undisputed evidence shows reliance by Guerra upon Garcia's conduct and that such reliance constituted an estoppel against the Bridge Company, also in overruling appellant's contention that it was error to submit to the jury a special issue on the ratification, by a majority of the board of directors of the execution and delivery of the notes with no evidence that

they knew all the material facts surrounding their execution. National Cash Reg. Co. v. Wichita Frozen Food Lockers, 142 Texas 109, 176 S.W. 2d 161; First National Bank v. Abilene Hotel Co., 103 S.W. 1120; Morgan v. Harper, Com. App. 236 S.W. 71.

*Cox. Patterson & Smith, Trueheart, McMillan & Russell* and *C. W. Trueheart*, all of San Antonio, and *J. I. Rhodes*, of Eagle Pass, for respondent, H. P. Guerra.

On the question of the authority of F. N. Garcia as agent for the bridge company, McAfee v. Travis Gas Corp., 137 Texas 314, 153 S.W. 2d 442; Freeborn v. Davis, 122 S.W. 2d 645. And on ratification, Quanah, A. & P. R. Co. v. Wichita Falls Bank & Tr. Co., 127 Texas 407, 93 S.W. 2d 701.

MR. JUSTICE SMITH delivered the opinion of the Court.

The opinion handed down in this cause on December 10, 1952 is withdrawn and the following opinion is substituted in lieu thereof:

Although other questions are raised, the principal issue in this case concerns the liability of the Citizens Bridge Company, a corporation, upon promissory notes executed in its name and delivered to H. P. Guerra for the sole purpose of satisfying personal debts owed him by F. N. Garcia, president of the Bridge Company. Both the trial court and the Court of Civil Appeals permitted Guerra to recover as holder of the notes.

F. N. Garcia, a resident of Piedras Negras, Mexico, is the central figure in this controversy. Among his many business enterprises was an unincorporated bank in Eagle Pass, Texas, conducted under the name of the Viguera Banking Company and owned solely by him. On July 25, 1949 proceedings in bankruptcy were instituted against him; he was adjudged a bankrupt by a United States District Court on January 18, 1950, and his bankrupt estate, including the Banking Company, is represented in this suit by Francis G. Aldridge, the receiver.

F. N. Garcia was also, for many years prior to this suit, a director in and president of the Citizens Bridge Company, a corporation chartered for the purpose of constructing and operating a toll bridge over the Rio Grande River between Del Rio, Texas, and Villa Acuna, Mexico. He owned approximately 85% of the stock in the Bridge Company. At the time of the

execution of the notes in suit, other directors were E. F. Measels, a resident of Del Rio; F. N. Rose, Rafael Garcia, treasurer of the Bridge Company and a son-in-law of F. N. Garcia; and Victoriano Garcia, secretary of the Bridge Company although he testified that he tendered his resignation as secretary on May 26, 1949. E. F. Measels testified that he was appointed secretary on May 26, 1949.

F. N. Garcia was personally indebted to Guerra, a resident of Roma, Texas. As a result of several extensions and renewals of debts dating back to 1946 or 1947 Guerra held four personal notes of his totalling $50,175 and bearing 10% interest. Two of these notes were to become due on May 25, 1949 and the other two in the following month. Having become dissatisfied with financial statements supplied by Garcia because of the lack of information in them, H. P. Guerra and his son, M. A. Guerra, drove to Piedras Negras on May 7, 1949 to make some readjustment with Garcia on his indebtedness. The Guerras contacted F. N. Garcia and Rafael Garcia that afternoon, made a trip to Del Rio and Villa Acuna that evening, and returned to Piedras Negras to spend the night in Garcia's home. On the following morning Garcia offered to pay the indebtedness by endorsing over to Guerra ten $5,000 notes of the Crystal Ice Factory, Harineras Unidas del Norte, and the Citizens Bridge Company. Guerra agreed to this proposal provided that interest be paid at the rate of 12%, and the ten notes were delivered to him on that day, May 8, 1949. Three of the notes were executed in the name of the Citizens Bridge Company and are the notes in suit.

Each was dated May 4, 1949 and was signed in the name of the Bridge Company by Rafael Garcia as treasurer and Homero de los Santos as secretary and was made payable to the Viguera Banking Company. They were endorsed to Guerra by Garcia as manager of the Banking Company and by him personally. M. A. Guerra testified that the corporate seal was not on the notes and it was added when he noted its absence. H. P. Guerra, however, testified that the seal was on the notes when they were given to him.

Under date of May 13, 1949 the Viguera Banking Company gave the Citizens Bridge Company credit for a deposit in its special account of $14,625.00, representing credit for the three notes, less interest in the sum of $375.00. On May 25, 1949 the Banking Company closed its doors for business to the public.

Sometime after May 8, H. P. Guerra had discovered that Homero de los Santos, an employee of the Banking Company, had no connection with the Bridge Company although his signature appeared on the notes of the Bridge Company as secretary. On May 27, 1949, J. C. Guerra, a son of H. P. Guerra, and Rafael Garcia went to see V. Garcia in Villa Acuna to have him sign the notes as secretary. The signatures of de los Santos had been lined out or removed. V. Garcia testified that, after he informed them that he had resigned as secretary on May 26, 1949, he was told by J. C. Guerra that the resignation was not effective until he had received a written acceptance of it. V. Garcia then signed his name to the notes and re-delivered them to J. C. Guerra. The word "secretary" was later added underneath the signatures of V. Garcia.

H. P. Guerra brought suit on the notes against the Bridge Company as maker and against Francis G. Aldridge, alleging that F. N. Garcia and the Banking Company were liable as endorsers. The Bridge Company pleaded non est factum; that the notes were prepared at the instance of F. N. Garcia and delivered by him to Guerra for the sole purpose of satisfying his personal debts to Guerra; that the notes were so executed and delivered without authority and the Bridge Company had not ratified such acts, that the Bridge Company had received no consideration for the notes and that it had never had any dealings with Guerra; and that Guerra had taken the notes with notice of their accommodation character and under all the facts and circumstances was not a holder in due course of the notes.

F. N. Garcia filed an answer alleging that he had been adjudged a bankrupt and was submitting himself generally to the jurisdiction of the court, and further pleading a general denial with a prayer for judgment that plaintiff recover nothing. Francis G. Aldridge, the receiver of the bankrupt estate of Garcia, filed a plea to the jurisdiction of the District Court of Maverick County. The trial court's action in overruling this plea was affirmed by the Court of Civil Appeals. The receiver filed a cross action against Guerra alleging that on or about May 7, 1949 Guerra demanded of Garcia and did collect the sum of $3,250.00 as interest; and that the interest paid at the rate of 12% constituted usury and entitled Garcia and the receiver to recover from Guerra double the amount of the usurious interest so paid. Guerra replied to the cross action by supplemental petition alleging that should any judgment be obtained against him in favor of the receiver, that he (Guerra) was entitled to offset

against such judgment the sum of $15,000.00, the principal of the three notes executed by Rafael Garcia. Guerra's third amended original petition alleged that the execution and delivery of the notes sued on was authorized by the Bridge Company and that the Company was estopped to deny their validity. This issue was not submitted to the jury and Guerra did not request its submission or except to the court's charge for failure to submit it.

Among the findings made by the jury were these: that a majority of the directors of the Bridge Company ratified the making and delivery of the three notes; that on May 8, 1949 Guerra had no actual knowledge of an infirmity in the three notes; that on May 27, 1949 Guerra did have actual knowledge of an infirmity in the notes; that on May 8 Guerra had no knowledge of such facts that his action in taking the notes amounted to bad faith; that on May 27, 1949 Guerra did have knowledge of such facts that his action in taking the three notes amounted to bad faith.

The trial court entered judgment in favor of Guerra for $15,000.00 against the Bridge Company, F. N. Garcia and the receiver of his bankrupt estate. Judgment was entered in favor of the receiver against Guerra, but the latter's plea of offset was refused. All parties appealed to the Court of Civil Appeals for the Fourth Supreme Judicial District at San Antonio which modified the judgment of the trial court to the extent of allowing Guerra the offset. In affirming Guerra's recovery on the notes, the Court of Civil Appeals held that "F. N. Garcia had authority to execute the notes of the Bridge Company," 248 S.W. 2d 541, and that the notes "were supported by the consideration of a credit in the Viguera Banking Company." That Court took the position that Garcia in effect, had executed the notes since his endorsement was an approval of them as executed and that his express authority to do so was shown by the conduct of the directors of the Bridge Company in "abdicating" management of the corporation to Garcia, in which case Garcia had express authority co-extensive with the authority of the directors to bind the corporation. 248 S.W. 2d 538.

The controversy between Guerra and the Bridge Company will be dealt with first. It is clear that the notes in suit were executed solely for the accommodation of F. N. Garcia, to be exchanged for his personal notes then held by respondent, and that no consideration passed to the Bridge Company by virtue

of their execution and delivery. The corporation had no power to execute such notes for the sole purpose of satisfying Garcia's personal debt. Article 1348 and 1349, R. C. S., 1925; Vernon's Ann. Civ. Stat. Arts. 1348, 1349; Farracy v. Security Nat. Bank, Tex. Com. App., 29 S.W. 2d 1073; Al & Lloyd Parker, Inc. v. Cameron County Lumber Co., Tex. Civ. App., 56 S.W. 2d 256, affirmed 122 Texas 487, 62 S.W. 2d 63. Respondent, citing Quanah A. & P. Ry. Co. v. Wichita State Bank and Trust Co., 127 Texas 407, 93 S.W. 2d 701, 106 A. L. R. 821, contends that the Bridge Company received a valuable consideration for the notes because of the credit established in its favor for the amount of the notes (less interest) on the books of the Banking Company. But the facts in the Quanah case are clearly distinguishable. In that case the bank set up a credit on its books in favor of the defaulting employee and there was no question but that the credit was a bona fide and usable credit; whereas, in this case the record reflects a course of self-dealing. The Bridge Company's treasurer, at F. N. Garcia's instance, executed notes in the name of the Bridge Company as an accommodation for Garcia, and Garcia, knowing that the notes were ultra vires, could not give them validity by setting up a credit with himself. The credit on the books of the bank was no more than a promise by Garcia to pay the notes and he had already guaranteed their payment by his endorsement.

■ The provisions of Section 29, Article 5933, R. C. S. that an accommodation party is liable to a holder for value even if the holder knows of the accommodation character of the instrument, is not applicable to a corporate accommodation party. The rule is that a corporate accommodation party is not liable to a holder of the note who has notice of its accommodation nature. But where the holder has no knowledge of the accommodation character of the note, the corporation will be liable if it has the power to issue notes in the regular course of business. See cases cited in Ballantine, Corporations, p. 252, n. 14; Stevens, Corporations, p. 227, n. 82; Annotation, 95 A. L. R. 973-77; I Hildebrand, Texas Corporations, p. 261, n. 81; p. 299, n. 31; Beutel, Brannan's Negotiable Instruments Law, p. 577 (7th Ed.). In order to prevail as a holder in due course, Guerra must have taken the notes without notice of their accommodation nature.

The rights and status of respondent as a holder in due course are governed by the following sections of Article 5935, R. C. S. Under Section 52 for one to be a holder in due course it must appear that at the time he took the instrument he "had no no-

tice of any infirmity in the instrument or defect in the title of the person negotiating it". Section 56 provides that "to constitute notice of an infirmity in an instrument or defect in title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

■ Respondent has jury findings that, at the time he took the notes on May 8, 1949, he had no actual knowledge of infirmities in them, and no knowledge of such facts that his action in taking the notes amounted to bad faith. There is no reason for disturbing the former finding as to actual knowledge. Guerra testified that Garcia proposed to pay the debt by delivering notes "that the Viguera Banking Company had"; that if the Bridge Company notes were executed without authority and without consideration passing to it from the Banking Company, he had no knowledge of such facts; and that the notes were dated May 4, 1949 and were regular on their face. Nor can it be said that the information on the face of these notes, standing alone, was such as to charge Guerra with constructive knowledge of their accommodation nature. The notes in suit do not fit into one of the three categories of corporate commercial paper, otherwise regular on its face, which were held to give a taker constructive notice of want of authority to negotiate them in settlement of a personal debt. (1) Where the paper is payable to the corporation, or to an officer or agent of the corporation as such, and is endorsed by the officer or agent and delivered in payment of his personal debt. (2) Where the instrument is drawn on or executed in the name of the corporation by the officer or agent, and is delivered in satisfaction of the personal debt. (3) Where the paper is drawn on or executed in the name of the corporation by the officer or agent, payable to the officer or agent executing same, and is delivered in satisfaction of the personal debt. See Rightmire, Bad Faith in Negotiable Paper, 18 Michigan L. Rev. 355; Note, 17 Texas L. Rev. 200.

■ It is then necessary to consider the Bridge Company's contention that as a matter of law Guerra had on May 8, 1949, knowledge of such facts that his action in taking the notes amounted to bad faith. This is normally a question of fact. But it is necessary to know the legal standards by which the mala fides of Guerra are to be measured. They are found in West v. First Baptist Church of Taft, 123 Texas 388, 71 S.W. 2d 1090; Quanah A. & P. Ry. v. Wichita State Bank & Trust Co., 127

Texas 407, 93 S.W. 2d 701, 106 A.L.R. 821; American Surety Co. of New York v. Fenner, 133 Texas 37, 125 S.W. 2d 258; Fenner v. American Surety Co. of New York, Tex. Civ. App., 156 S.W. 2d 279, 282. Those standards are: (1) The test is good or bad faith and not diligence or negligence. (2) Knowledge of facts merely sufficient to cause one of ordinary prudence to make inquiry, with failure to make such inquiry, is not evidence of bad faith. (3) Even gross negligence is not the same thing as bad faith, although it may be evidence tending to prove bad faith. (4) To constitute evidence of bad faith, the facts known to the taker must be such as reasonably to form the basis for an inference that in acquiring the instrument with knowledge of such facts he acted in dishonest disregard of the rights of defendant. (5) Wilful ignorance is the equivalent of bad faith and bad faith may be shown by a wilful disregard of and refusal to learn the facts when available and at hand. In connection with the standard last enumerated it may be noted that the court in Fenner v. American Surety Co. of New York, supra, approved a definition of bad faith as that term is used in Section 56 in this language: ". . . the term 'bad faith' * * * means that the person taking the instrument must have had knowledge of such substantial facts and circumstances as to create in his mind a suspicion that there was something wrong with the title of the person from whom he takes it, to the instrument itself, or to the money represented by such instrument, combined with an intentional disregard of and refusal on the part of the taker of the instrument to learn the facts from the means of knowledge which he knows are at hand". What, then, are the facts of which Guerra had actual knowledge and which may be said to convict him of bad faith, as a matter of law? From his standpoint it may be said that good faith is shown by the fact that the notes were regular on their face and ostensibly represented a bona fide debt of the Bridge Company to Garcia, and by the fact that Guerra, as a legitimate creditor desirous of being better secured in his debt, accepted them in lieu of Garcia's personal notes. H. P. Guerra testified that he was unaware that Garcia was in financial straits, but, on the contrary, was told by Garcia that he was in good financial shape. It may be noted that M. A. Guerra testified that he and his father were told by Garcia that he (F. N. Garcia) and Rafael Garcia were authorized to sign the Bridge Company notes and that he (F. N. Garcia) was authorized to borrow as such as $25,000.00 for the Bridge Company at his option. This last bit of testimony may be more damaging than helpful to Guerra since it shows that the question of authority was brought up. Be that as it

may, arrayed against the facts favorable to Guerra are these unfavorable to his position. His testimony as to his confidence in Garcia's financial condition is inconsistent, or even in conflict with his motive in visiting Garcia in the first place, with his desire to have security other than Garcia's personal notes which were then unmatured, and with Garcia's willingness to pay 12% interest in order to extend again debts already in existence two or three years. In 1946 or 1947 Guerra purchased 6% certificates of deposit of the Viguera Banking Company which he later exchanged for 8% certificates in August, 1948. These were in turn exchanged for promissory notes of the Banking Company bearing 10% interest and becoming due on February 25, 1949. These notes were not paid but were renewed and extended by the execution of new Banking Company notes becoming due on May 25, 1949. These were the ones exchanged for the notes in suit. Garcia was indebted to Guerra for $50,000.00. Guerra knew that the 12% interest Garcia agreed to pay for an extension of the debt was in excess of the maximum legal rate of 10%. Guerra was himself a banker of long experience, having been connected with a bank at Rio Grande City for some 35 years, for a time as its president and as a director for some 20 years, a part of this time as chairman of the Board. He knew, according to his testimony, that a bank must make its profit by lending money and he therefore must have known that a bank which charged 10% and paid him 12% was in desperate financial straits, or, at least, that the soundness of its borrowing and lending operations was open to question. He also knew that Garcia owned 85% of the stock in the Bridge Company and would have considerable influence in selecting the officers; that Rafael Garcia was his son-in-law; and that the notes were made payable to his alter-ego, the Viguera Banking Company. However negligent Guerra may have been under all these circumstances in failing to make additional inquiry as to the validity of the notes, we cannot say, in the face of the jury findings, that he was guilty of bad faith as a matter of law.

■ Having decided that Guerra was not guilty of bad faith as a matter of law, it is necessary to consider the Bridge Company's contention that the parties to the notes had no authority to execute them. Section 23, Article 5932, R. C. S. provides that "when a signature is forged or made without the authority of the person whose signature it purports to be, it is wholly inoperative, and no right to retain the instrument, or to give a discharge therefor, or to enforce payment thereof against any

party thereto, can be acquired through or under such signature, unless the party, against whom it is sought to enforce such right, is precluded from setting up the forgery or want of authority." This section would certainly be applicable where there is a complete absence of an agency relationship between the person whose signature appears on the instrument and the person who signed it. But in the case of corporate accommodation notes, an assertion that the officers signing the notes exceeded their authority in doing so is no stronger than the defense that the corporation has no power to make an accommodation note. And we have already pointed out that the latter defense is not available to a corporation which has the power to issue notes in the regular course of business.

■ We next consider two points presented to this Court in the petition for writ of error filed by the receiver of the bankrupt estate of F. N. Garcia. The first point is that the trial court and the Court of Civil Appeals erred in holding that the District Court of Maverick County had jurisdiction of respondent's suit against the receiver. The point is overruled.

The second point is that the trial court correctly refused to allow respondent to set off the recovery by the receiver of $7,100.00 penalty for usury against the amount of his recovery, and that the Court of Civil Appeals erred in reversing this ruling and allowing such setoff. The judgment in favor of the receiver has become final in so far as it awarded a recovery against the respondent.

We approve and affirm the judgments of the trial court and the Court of Civil Appeals awarding judgment in favor of the respondent against F. N. Garcia and the receiver in bankruptcy in the sum of $15,000.00. Therefore, the sole question to be decided is whether respondent is entitled to have the amount of the judgment for penalty credited on his claim against the bankrupt estate. The Bankruptcy Act, Section 68, sub. a, 11 U.S.C.A. §108, sub. a declares: "In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed and paid." The right of the receiver to recover the penalty does not depend on payment of the debt to respondent. The two claims involved here cannot be classified as mutual debts. In the case of McCollum v. Hamilton National Bank, 303 U. S. 245, 58 Sup. Ct. 568, 570, 82 L.Ed. 819, the Court said "***The State Court erred

in permitting respondent to credit the amount of petitioner's judgment for penalty upon the notes given it by the bankrupt. To allow respondent to satisfy the judgment for penalty by mere deduction from its claim against the bankrupt estate is to detract from the punishment definitely prescribed. The sentence specifically required by law may not be cut down by implication, set-off or construction; * * *. Liability for the penalty does not arise in contract but is laid in invitum as a disciplinary measure * * *. It follows that respondent is not entitled to satisfy petitioner's judgment by deducting the amount of it from the respondent's claim against the bankrupt's estate."

The judgments of the trial court and the Court of Civil Appeals in favor of respondent, H. P. Guerra, against petitioner, Citizens Bridge Company, are affirmed. The judgment of the Court of Civil Appeals, modifying the judgment of the trial court is reversed and in all other respects the judgments of both courts are affirmed.

Opinion delivered April 22, 1953.

Mr. Justice Culver not sitting.

Rehearing overruled June 3, 1953.