**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 98-50281
Summary Calendar
_____


SCOTT KOLB,
d/b/a KOLB FOREST PRODUCTS,
and
LORILEE KOLB,
d/b/a KOLB FOREST PRODUCTS,

                              Plaintiffs-Appellees,

          VERSUS

     ATALANTA CORPORATION
            and
     BRAZIL PACIFIC, LTD.,

                              Defendants,

     ATALANTA CORPORATION,

                              Defendant-Appellant.


_____

Appeal from the United States District Court
for the Western District of Texas
(W-97-CV-151)
_____

December 23, 1998

Before JOLLY, SMITH, and WIENER, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]


     Atalanta Corporation ("Atalanta") appeals a summary judgment

in favor of plaintiffs Scott and Lorilee Kolb, doing business as

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Kolb Forest Products ("Kolb").  Because Atalanta has not raised a genuine issue of material fact concerning Kolb's status as a buyer in the ordinary course of business, and because the district court did not abuse it discretion in denying Atalanta's motion to allow additional discovery, we affirm.

## I.

Since approximately 1993, Kolb has purchased and brokered the purchase of large quantities of partially processed lumber and wood products from Brazil Pacific Ltd. ("BP").  In these transactions BP was serving as an agent for Atalanta, and BP's president, Craig Rosenlund, even negotiated payment arrangements with Kolb on Atalanta's behalf.  In all these transactions, however, Kolb received its actual invoice or commission (depending on whether it had purchased or brokered the wood in question), and made its payments (in response to an invoice), directly to or from Atalanta.

Things changed in early 1995, when Rosenlund offered to sell Kolb some wood from sources other than Atalanta.  Kolb agreed, and over the next two years, Kolb purchased $200,994.30 of such wood.  BP instructed Kolb to pay by sending its checks directly to BP, instead of Atalanta, and Kolb did so.  In November 1996, Atalanta invoiced Kolb for some of this same wood.  Kolb refused to pay and sought declaratory relief, naming Atalanta and BP as defendants.

Because BP failed to answer, default judgment was entered against it.  Atalanta, however, not only answered but filed a counterclaim requesting payment of $127,364.84 from Kolb.  Kolb

2

moved for summary judgment on its request for declaratory relief and Atalanta's counterclaim. Atalanta responded by requesting that the court extend the summary judgment submission date.

Atalanta's request for extension was based on its need for additional time to take Rosenlund's deposition; the court granted this extension, giving Atalanta an additional thirty days (to November 13, 1997) to complete discovery. On October 29, 1997, with leave of court, Kolb filed an amended motion for summary judgment but did not introduce new evidence. Atalanta responded to the amended motion on November 3 but also requested a second extension of the summary judgment submission deadline for the purpose of deposing Rosenlund. On December 22, Atalanta filed both a supplemental response to Kolb's amended motion and its third request for an extension to depose Rosenlund.

On January 15, 1998, the court denied Atalanta's motion for extension and granted Kolb's amended motion for summary judgment. Atalanta ultimately did depose Rosenlund, on the untimely date of March 27, 1998. The court entered final judgment on June 15, 1998. Atalanta challenges both the summary judgment and the denial of the motion to extend the summary judgment submission deadline.

## II.

### A.

We review a summary judgment *de novo*. *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). We may affirm only if there is no genuine issue of material

fact and if, on such undisputed facts, the moving party was entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). All reasonable inferences from the record must be drawn in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### B.

The parties correctly identify the dispositive issue in the summary judgment motion: whether Kolb qualifies as a "buyer in the ordinary course of business." Under Texas's adoption of the Uniform Commercial Code, "a buyer in ordinary course of business (Subdivision (9) of Section 1.201) . . . takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence." TEX. BUS. & COM. ANN. § 9.307(a) (West 1991). Therefore, if Kolb qualifies as a "buyer in ordinary course of business," Atalanta cannot recover against him. Under the referenced subdivision of § 1.201, we find the following definition of a "buyer in ordinary course of business":

> a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind . . . .

TEX. BUS. & COM. ANN. § 1.201(9) (West 1994). We note that the requirement under § 1.201(9) is "without knowledge," not "without notice." This is an important distinction, because notice depends

4

on objective reasonableness under the circumstances, whereas knowledge for purposes of demonstrating bad faith connotes the actual subjective knowing of a fact. *Cf. Citizens Bridge Co. v. Guerra,* 258 S.W.2d 64, 69-70 (Tex. 1953). As the Code explains, "[a] person 'knows' or has 'knowledge' of a fact when he has actual knowledge of it." TEX. BUS. & COM. ANN. § 1.201(25) (West 1994).

Atalanta argues that summary judgment was inappropriate because it had raised genuine issues of material fact regarding Kolb's knowledge of whether the wood he purchased from BP was coming from Atalanta or some other source. In support of this argument, Atalanta points to (1) the lack of an affidavit on the part of Lorilee Kolb; (2) the purported conclusional nature of Scott Kolb's affidavit; and (3) the purported "course of dealing" among Kolb, BP, and Atalanta, which should have given rise to Kolb's knowledge that the wood he was purchasing was Atalanta's. Individually and taken together, these assertions do not create a genuine issue of material fact.

C.

Despite Atalanta's assertions to the contrary, Kolb carries his initial burden of putting forth the facts upon which judgment in his favor as a matter of law may be rendered. While Atalanta is correct in stating that merely conclusional affidavits are not enough to meet this burden, *see Associates Discount Corp. v. Rattan Chevrolet, Inc.,* 462 S.W.2d 546, 550 (Tex. 1970), Kolb's affidavit is not merely conclusional. He identifies the grounds for his

belief that the wood he was purchasing was BP's and for his attestation that he lacked knowledge to the contrary.

Atalanta argues that the lack of an affidavit from Lorilee Kolb prevents Kolb from meeting its burden of proof. This issue is illusory, because the record contained the deposition of Lorilee Kolb that states, "I didn't know who Brazil Pacific got the lumber from, or who was involved." This unimpeached statement serves to satisfy Kolb's burden of proof with regard to Lorilee.

D.

Atalanta points to evidence of a purported "course of dealing" among Kolb, BP, and Atalanta. Atalanta argues that Kolb's deviation from this ordinary course of dealing belies his claim of good faith lack of knowledge that the wood in question was Atalanta's. Our review of the record reveals that Atalanta's obsession with the Kolb's "deviation" is unfounded.

The record demonstrates that Kolb had been in a business relationship with BP for nearly two years at the time BP informed him of its new-found source of wood for Kolb. Such an ongoing relationship inevitably gives rise to a certain degree of trust, and therefore it is not surprising that Kolb believed Rosenlund's representations regarding the source of the wood. Nothing in the record suggests that the Kolbs were in any way suspicious, or even had reason to be suspicious, of Rosenlund's proposal. There was nothing at all mysterious about BP's informing Kolb of wood from another source, or about Kolb's agreeing to pay for this wood by

issuing checks directly to BP, rather than to Atalanta.

In light of its long-term relationship with BP, Kolb acted reasonably and businesslike. The record is devoid of any attendant circumstances that would lead us to believe that Kolb had a reason for mistrusting Rosenlund, let alone possessed actual knowledge of wrongdoing.

Atalanta in turn argues that, at the very least, the inferences that could be drawn from these circumstances, and that must be drawn in Atalanta's favor, preclude summary judgment. This argument reveals a misunderstanding of summary judgment. As explained in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), "[t]he evidence of the nonmovant is to be believed, and all *justifiable* inferences are to be drawn in his favor." (Emphasis added.). Although we could stretch our imagination to envision a circumstance in which Atalanta's facts supported its argument, that would go beyond our obligation to make all "justifiable" inferences. Such inferences must be reasonable, and the inferences Atalanta asks us to make are simply unreasonable. For that reason, no genuine dispute of material fact has been demonstrated.

## III.

Atalanta questions the district court's refusal to extend the summary judgment submissions deadline. Atalanta speaks in provocative terms of an affidavit by Rosenlund that was "incorrect" because of reliance on "incomplete information provided by Appellees' counsel." A review of the record shows that Atalanta's

assertions are far less weighty than one is initially led to believe.  While Rosenlund's affidavit contained errors, these errors were trivial and did not bear on a material fact pertinent to the summary judgment motion.  Under such circumstances, the court did not abuse its discretion in refusing to grant a second extension. *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 28 F.3d 1388, 1395-97 (5th Cir. 1994) (en banc).

AFFIRMED.