## BROWNFIELD STATE BANK v. HUDSON.

### No. 4230.

Court of Civil Appeals of Texas. Amarillo.
May 21, 1934.

Rehearing Denied July 2, 1934.

R. L. Graves, of Brownfield, for appellant.

.Lockhart & Brown, of Lubbock, for appellee.

HALL, Chief Justice.

The appellant bank sued appellee, Hudson, to recover upon a promissory note in the sum of $1,681.64, due and payable November 1, 1928, with interest from maturity at the rate of 10 per cent., and which contained a provision for 10 per. cent. attorney's fees. The appellant also declared upon a chattel mortgage given to secure said note, and prayed for foreclosure of its mortgage lien.

The defendant, Hudson, answered by general demurrer, a special exception, a general denial, and for special answer alleged in substance that in March, 1920, the promoters of the Stock Raisers' Loan Company, which was then in process of organization, together with O. T. Hawley, the cashier of the plaintiff bank, induced him to subscribe for one hundred shares of the capital stock of said corporation, for which he executed his note in the sum of $1,000, said note being the only consideration for the issuance and delivery to him of the shares of stock. That Hawley, the cashier of the plaintiff bank, was present and knew that the note was the sole consideration for the one hundred shares of the capital stock of said corporation. That soon thereafter the promoters of the loan company transferred and assigned said note to the plaintiff bank, which took the note with full notice and knowledge of the fact that plaintiff's note was the sole consideration for the shares of stock. That said note at its maturity was renewed by defendant, and at various and sundry times since the renewals were again renewed, and that the note sued on by plaintiff is a renewal of said original indebtedness evidenced by said $1,000 note which the bank acquired from the representatives of the Stock Raisers' Loan Company. By reason of said fact the note sued on is wholly void. That he does not claim the capital stock in the Cattlemen's Loan Company, described in plaintiff's petition, and tenders the same to plaintiff. He prays that the bank take nothing and for judgment canceling the chattel mortgage lien upon the property described therein.

Plaintiff filed a supplemental petition, which consists of a general demurrer to the

defendant's answer, a general denial, and the allegation that the original note had long since been paid by the defendant and was not included in the note sued on.

The court overruled the general demurrer, and the case was submitted to the jury upon one special issue, as follows: "Did O. T. Hawley, the Cashier of the Brownfield State Bank, at the time the Bank acquired the $1,000.00 note executed by Hudson, know that said note had been executed in payment for stock in the Stock Raisers Loan Company?" This was answered in the affirmative.

Hudson, in order to secure the right to open and close, filed a written admission of the execution of the note and the chattel mortgage, and admitted the pledge of the shares of stock as collateral security for the payment of the note and that the bank was entitled to recover unless defeated by the matters and things set up in the defendant's amended original answer. As appears from the answer, the substance of which is hereinbefore set out, the sole defense was the alleged invalidity of the $1,000 note. The appellee claimed the note was invalid because it was executed and the stock issued in violation of the Constitution, art. 12, § 6, which is as follows: "No corporation shall issue stock or bonds except for money paid, labor done or property actually received."

R. S. 1925, art. 1353, also provides: "No corporation shall issue any stock whatever, except for money paid, labor done which is reasonably worth at least the sum at which it was taken by the corporation, or property actually received reasonably worth at least the sum at which it was taken by the company."

The judgment of the court was evidently rendered upon the theory that, because the original note for $1,000 was given in payment for stock in the corporation, it was utterly void under the provisions above quoted from the Constitution and the statutes.

It is held in Washer v. Smyer, 109 Tex. 398, 211 S. W. 985, 987, 4 A. L. R. 1320, and several cases following the rule there announced, that, while a note given for stock under such circumstances is unenforceable, as between the parties, neither the stock nor the note is utterly void. The court said: "There is no declaration in the constitutional provision that a transaction in which something other than money, property, or labor is received in payment for the corporation's stock, shall be utterly void. It prohibits such a transaction and therefore makes it unlawful, but that is the extent to which it goes.

If a security be accepted in payment for the stock, such, for instance, as a subscriber's note, which is not property for such a purpose, the Constitution does not say either that it, or the stock issued for it, shall be void. The acceptance of the note in payment for the stock and the issuance of the stock are only interdicted. * * * There is an essential difference between prohibiting a certain form of transaction—making it unlawful, and declaring that it, with all securities, issuing out of it, shall be utterly void. It is a distinction familiar in the law." See 10 Tex. Jur. 743, § 115.

Since the note was given for stock in a loan company which, as the testimony shows, was organized for the purpose of enabling cattlemen to borrow money upon such securities as they had, we may assume that the corporation was authorized to invest its funds in such securities.

Under the admission the plaintiff was prima facie entitled to recover upon its note and to have its mortgage lien foreclosed upon the property described. While the value of the property is not stated in the mortgage, we may assume that the bank considered it sufficient security. In its supplemental petition the bank did not plead either ratification or estoppel. The court did not err in refusing the special issues requested by the appellant.

The only assignment necessary to be considered is the first, which complains of the court's action in overruling plaintiff's general demurrer to the defendant's answer. As shown above, the defendant alleged that the note sued on was the result of several renewals of the original $1,000 note given for stock which at the time of a former renewal was combined with another note which he then owed the bank. The testimony of the bank's officers, as well as Hudson's testimony, shows that the note sued on was in fact a renewal several times removed from the original transaction. The uncontradicted testimony of the witnesses is that, while the several renewal notes were credited with numerous payments by Hudson, none of the payments were applied by either party to the extinguishment of any particular part of the indebtedness. Where no application is made at the time of a payment and a part of the debt is valid and the remainder invalid, equity will apply the payments so made to that portion of the debt which is valid. Wingate v. Peoples' Bldg., etc., Ass'n, 15 Tex. Civ. App. 416, 39 S. W. 999.

We think the appellee established his con-

142

tention that the note sued on herein was a renewal of, and included, the $1,000 note originally executed. It may be admitted that, if suit had been filed upon either the $1,000 note or any renewal thereof, except the last, recovery by the bank could have been defeated upon the ground that it violated the constitutional and statutory provisions set out above; but the record shows that, at the time the note sued upon was executed, Hudson also executed and delivered his chattel mortgage, giving a lien upon 27 head of horses and mules, together with 80 acres of cotton, and pledged shares of stock in a different corporation valued at $400, as additional security.

The courts have construed a note that is secured by a lien upon property as "property" within the meaning of the constitutional and statutory provisions. General Bonding & Casualty Ins. Co. v. Moseley, 110 Tex. 529, 222 S. W. 961; 10 Tex. Jur. 744, and authorities cited.

Parties to contracts which are voidable, and even illegal, may by subsequent agreement and the execution of a new contract purge the original of its objectionable element. San Antonio Light Publishing Co. v. Moore, 46 Tex. Civ. App. 259, 101 S. W. 867; Armstrong v. Toler, 11 Wheat. (U. S.) 258, 6 L. Ed. 468; Clark v. Phelps, 6 Metc. (Mass.) 296; Chadbourn v. Watts, 10 Mass. 121, 6 Am. Dec. 100; Stout v. Ennis, 28 Kan. 706; Mitchell v. Lyman, 77 Ill. 525; Faikney v. Reynons, 4 Burr. 2069; Barnes v. Hedley, 2 Taunt. 184.

It is held in Ramsay v. Crevlin (C. C. A.) 254 F. 813, that, while the statute declares that stock issued in violation of it shall be void, it does not follow that such stock is void in such a sense that there remains no locus pœnitentiæ that such stock may not be validated by the subsequent payment and receipt of the money for it.

Since under the holding in Washer v. Smyer, supra, the note was not utterly void, in our opinion the execution of the mortgage by Hudson conveying sufficient property apparently to satisfy the renewal note had the effect of validating the obligation. If he had executed the mortgage in the beginning, the validity of the transaction could not have been questioned. The mere postponement in providing the security for the note for several years does not lessen its effect. These facts all appeared from the appellee's answer, and, since they constituted no defense, the court should have sustained the general demurrer.

The judgment is reversed, and the cause remanded.