TEXAS TOOL TRADERS et al., Appellants,

v.

W. E. GRACE MANUFACTURING COMPANY, Appellee.

No. 17939.

Court of Civil Appeals of Texas, Dallas.

Sept. 28, 1972.

Rehearing Denied Nov. 30, 1972.

Eric Eades, Jr., Eades & Eades, Dallas, for appellants.

Henry D. Akin, Akin, Gump, Strauss, Hauer & Feld, Dallas, for appellee.

BATEMAN, Justice.

This is a usury case. The appellee W. E. Grace Manufacturing Company originally sued Texas Tool Traders and its president,

William B. Mims, Jr., to recover certain indebtedness. Texas Tool Traders and Mims filed a counterclaim for the statutory penalties alleged to be due because of usurious interest contracted for, charged and received by appellee. While the suit was pending Texas Tool Traders was adjudicated a bankrupt, and Sol Levin, Trustee in Bankruptcy, was substituted for it and prosecuted the counterclaim. Upon a special issue verdict the trial court rendered judgment for appellee for the debts sued for plus $10,000 exemplary damages and denying appellant and Mims any relief on their counterclaim. This appeal by Sol Levin, Trustee, is only from that part of the judgment denying the counterclaim. Mims does not appeal.

The facts of the case are practically undisputed. Texas Tool Traders and appellee were both in the machinery business and had traded with each other for several years. Texas Tool Traders had sold two machines called Bridgeport Mills to the Lockheed Company in California, for $25,000. However, the mills were in a warehouse and could not be withdrawn therefrom except on payment of $18,000. Although already indebted to appellee in the sum of $10,000, evidenced by a note dated November 14, 1969, which was past due, Texas Tool Traders persuaded appellee to advance the $18,000 necessary to remove the two Bridgeport Mills from the warehouse for delivery to Lockheed. Both parties to the transaction signed the following written instrument:

"Texas Tool Traders, Inc. agree to turn over a check to be received in payment of two Bridgeport Mills on Lockheed purchase order MMB 7 K 2510A, in the amount of $25,000.00 to W E Grace Mfg. Co. $6500.00 of this to be applied to a loan (note) in amount of $10,000. $500 of this to be a handling charge. Balance is the sum of $18,000. which W E Grace Mfg. Co. is advancing on this date to get the two above mills out of bonded warehouse for delivery to Lockheed. The warehouse is A P Pearson warehouse, Los Angeles.

January 27 1970."

Appellee advanced the $18,000, and in about 22 days the Lockheed check was received and endorsed over to appellee. However, Lockheed had deducted a one per cent discount, and the check was for only $24,750. Texas Tool Traders did not direct how it desired this amount applied, and appellee on its books credited the entire amount to principal. It simultaneously advanced an additional $1,800 to Texas Tool Traders. It also allowed Texas Tool Traders a credit of $273.06 which is not in dispute here. These transactions and entries, according to appellee's records, on February 28, 1970 left Texas Tool Traders still indebted to appellee in the sum of $4,776.94, as shown by the following statement:

| | |
|---|---|
| Note of Nov. 14, 1969 | $10,000.00 |
| Loan of Jan. 27, 1970 | 18,000.00 |
| Loan of Feb. 17, 1970 | 1,800.00 |
| | $29,800.00 |
| Credits: | |
| Machine repairs $ 273.06 | |
| Lockheed's check 24,750.00 | |
| | 25,023.06 |
| Balance as of Feb. 28, 1970 | $ 4,776.94 |

In his first two points of error appellant says it was established by undisputed evidence and the jury verdict that "appellee contracted for or charged or received" the $500 as interest for the use of $18,000 for twenty-two days, "which was more than double the amount of interest permitted by law," and that appellee had no right to credit the $500 on the principal of a pre-existing note, as the parties had agreed in writing that it would be applied as interest on the January 27, 1970 transaction. Both points will be considered together.

Tex.Rev.Civ.Stat.Ann. art. 5069–1.02 (1971) fixes 10 per cent per annum as the maximum legal rate of interest, "except as otherwise fixed by law," and art. 5069–

1.06 provides the penalties for usury. Subdivision (1) thereof provides that one "* * * who contracts for, charges or receives interest which is greater than the amount authorized by this Subtitle [10 per cent per annum], shall forfeit to the obligor twice the amount of interest contracted for, charged or received, and reasonable attorney fees * * *." Subdivision (2) provides that one "* * * who contracts for, charges or receives interest which is in excess of double the amount of interest allowed by this Subtitle shall forfeit as an additional penalty, all principal as well as interest and all other charges and shall pay reasonable attorney fees * * *."

Appellee concedes that the phrase "handling charge," as used in the above quoted agreement of January 27, 1970, was intended to mean "interest," and the jury found, in answer to Special Issue No. 8, that it was contracted for, charged or received as interest on the $18,000 advanced by appellee on that date.

Tex.Rev.Civ.Stat.Ann. art. 1302–2.09, provides that a corporation may contract to pay interest at a rate not to exceed 1½% per month, or 18% per annum. Texas Tool Traders was a corporation. 18% interest on $18,000 for 22 days amounts to about $195. The interest of $500 was therefore more than double the amount allowed by law. Appellant argues that he is entitled to recover, not only twice the amount of interest, or $1,000, but also the $18,000 principal plus a reasonable attorney's fee, found to be $2,500, or a total of $21,500.

Appellee argues that since the contract does not specify the maturity of the obligation to repay the $18,000 it does not provide for usurious interest. Appellant pled that it had been agreed both orally and in writing that the $18,000 would be repaid within thirty days. However, in answering Special Issues 9 and 9–A the jury declined to find that the parties had so agreed, either orally or in writing. We agree with appellant that these findings are immaterial and

should have been disregarded on his motion.

Under the law we must be guided by reality rather than by form, and even though the form of the contract be valid and free from the taint of usury on its face "if from all the facts its essence is found to be the receiving or contracting for a greater rate of interest than is allowed by law, the statutory consequences must be visited upon it." Pickrell v. Alpha Pipe & Steel, Inc., 406 S.W.2d 956, 959 (Tex.Civ. App., Amarillo 1966, writ ref'd n. r. e.); Independent Lumber Co. v. Gulf State Bank, 299 S.W. 939 (Tex.Civ.App., Galveston 1927, writ ref'd); Commercial Securities Co. v. Rea, 78 S.W.2d 707 (Tex.Civ. App., Galveston 1934, affirmed 130 Tex. 11, 105 S.W.2d 872); Maxwell v. Estate of Bankston, 433 S.W.2d 229 (Tex.Civ.App., Texarkana 1968, no writ); Federal Mortgage Co. v. State Nat. Bank, 254 S.W. 1002 (Tex.Civ.App., Beaumont 1923, writ dism'd).

In Shropshire v. Commerce Farm Credit Co., 120 Tex. 400, 30 S.W.2d 282, 286 (1930) the following text was quoted with approval:

"* * * Though there is authority to the contrary, it does not seem requisite that an excess be payable in any event. On the contrary a contract is usurious when there is any contingency by which the lender may get more than the lawful rate of interest * * *. Usury, it is considered, does not depend on the question whether the lender actually gets more than the legal rate of interest or not; but on whether there was a purpose in his mind to make more than legal interest for the use of money, and whether, *by the terms of the transaction,* and the means used to effect the loan, he may *by its enforcement* be enabled to get more than the legal rate."

In the same case, the court wrote a separate opinion on rehearing (Shropshire v. Commerce Farm Credit Co., 120 Tex. 412,

39 S.W.2d 11, 13 (1931)), wherein this language was quoted with approval from Leavitt v. De Launy, 4 N.Y. 363, 369:

> "If the contract provide for the payment of the loan with interest, at all events, it is enough to render it usurious, if in addition to the legal interest, it provide for the payment of excessive interest, upon a contingency. A stipulation even for a chance of advantage beyond legal interest, is illegal."

In the case at bar it is true that no time limit was specified within which the principal or interest would become due, except that they would be payable when the Lockheed check was received, but there was the possibility that it might be received (as it was) in such a short period of time that the $500 interest charged would be usurious. The contract contained no provision for remission of unearned or excessive interest and, as said in *Shear Co. v. Hall*, 235 S.W. 195, 197 (Tex.Com.App.1921, jdgmt. adopted): " * * * if a contract be so interpreted as to provide for no cancellation of unearned interest, it is usurious."

■ Moreover, the facts and circumstances here were such as to indicate that the parties contemplated that the machines would be delivered and paid for within a few days and to say that the absence of agreement as to the exact period of time the borrower would have the use of the money absolves the contract from the vice of usury, is to close one's eyes to reality.

■ When the Lockheed check for $24,750 was received on or about February 18, 1970 appellee, by entries upon its books, applied all of it to the principal of the two loans it had made to Texas Tool Traders, and no part of it to interest. It claims the right to do so since the debtor gave no instructions as to its application. 44 Tex. Jur.2d, Payment, § 40, pp. 693–4. Appellee also contends that in the absence of directions from the debtor equity required the application of the payment to the principal, or the lawful part of the debt, citing Brown-

field State Bank v. Hudson, 73 S.W.2d 140 (Tex.Civ.App., Amarillo 1934, writ ref'd), and other cases. However, we do not regard these cases as being in point because in none of them had the parties agreed in advance upon the manner of applying payments made by the borrower. In this case the parties did so agree and we do not regard the contract as ambiguous. The agreement of the parties as therein expressed is controlling, and appellee had no right to change or divert the agreed application without the debtor's consent. 44 Tex.Jur.2d, Payment, § 33, p. 687; Stacks v. East Dallas Clinic, 409 S.W.2d 842 (Tex. Sup.1966).

■ Appellee also directs our attention to the fact that Tex.Rev.Civ.Stat.Ann. art. 5069–1.06 (1971), subdivisions (1) and (2), provide a penalty only for contracting for, charging or receiving interest greater than the amounts authorized or allowed "by this Subtitle," whereas appellant's counterclaim is based on Tex.Rev.Civ.Stat.Ann. art. 1302–2.09, not a part of the same Subtitle, and which provides no penalty for charging a corporation more than 18% per annum. This contention is without merit. Article 5069–1.02 sets the maximum legal rate of interest at 10% per annum, "except as otherwise fixed by law." Article 1302–2.09 "otherwise fixes" 18% per annum as the maximum a corporation may pay. Article 5069–1.02 also provides that "*All contracts for usury are contrary to public policy and shall be subject to the appropriate penalties prescribed in Article 1.06 of this Subtitle.*" (Italics ours.) We think it is clear that the legislature intended the penalties provided for in Article 5069–1.06 to apply to all *contracts for a greater rate of interest than* allowed under Article 1302–2.09 as well as under Article 5069–1.02.

Appellant's first two points of error are sustained.

■ In his third point of error appellant asserts that his said claim for usury penalties is not subject to offset of appellee's claims under the provisions of Sec. 68, sub-

division a, of the Bankruptcy Act, 11 U.S. C.A. § 108.

If this were still a controversy between Texas Tool Traders as borrower and appellee as lender, appellee would have the right to offset its claim. 58 Tex.Jur.2d, Usury, § 67, p. 155; Cotton v. Thompson, 159 S.W. 455, 461 (Tex.Civ.App., Galveston 1913, no writ). But the claim for usury is not now being asserted by Texas Tool Traders; it is being asserted by appellant as trustee in bankruptcy for Texas Tool Traders and for the benefit of the creditors of Texas Tool Traders. Since appellee has no claim or judgment against appellant or the creditors for whom he acts, it has no right of offset unless it can bring itself within the provisions of Sec. 68 of the Bankruptcy Act, 11 U.S.C.A. § 108, the pertinent part of which is subdivision a, as follows:

> "a. In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid."

Appellee's claim consists of an unpaid balance of $3,781.15 past due on the above mentioned note for $10,000; another loan for $18,000 made on March 27, 1970 in reliance upon certain false and fraudulent representations, plus $10,000 exemplary damages awarded by the jury because of such fraud, a total of $31,781.15. In Citizens Bridge Co. v. Guerra, 152 Tex. 361, 258 S.W.2d 64, 71 (1953), a quite similar fact situation was before the court, and it was held that the right of the receiver in bankruptcy to recover the penalty of usury did not depend on payment of the debt due the lender by the bankrupt borrower, and, therefore, that the two claims could not be classified as "mutual debts." In holding there was no right of offset the court relied on McCollum v. Hamilton Nat. Bank of Chattanooga, 303 U.S. 245, 58 S.Ct. 568, 82 L.Ed. 819 (1938). In that case there was a suit by a trustee in bankruptcy for the pen-

alty imposed by federal law on a national bank for receiving usurious interest on a loan to the bankrupt, and it was held that the bank could not set off the amount of the bankrupt's notes against the trustee's claim. The court said in part:

> "To allow respondent to satisfy the judgment for penalty by mere deduction from its claim against the bankrupt's estate is to detract from the punishment definitely prescribed. The sentence specifically required by the law may not be cut down by implication, set-off or construction; for that would narrow the statute and tend to defeat its purpose. * * * Punishment for usury does not depend upon payment of the borrower's debt. It follows that respondent is not entitled to satisfy petitioner's judgment by deducting the amount of it from respondent's claim against the bankrupt's estate."

It is also pointed out that liability for the penalty does not arise in contract, but is a disciplinary measure, and that the determining of the extent of guilt by the judgment does not change the liability for the penalty to one for debt.

On the strength of those authorities, we likewise hold in this case that appellant's claim for penalties totaling $21,500 cannot be set off as a "mutual debt" against appellee's claim against the bankrupt Texas Tool Traders. Appellant's third point of error is sustained.

The part of the judgment decreeing that appellant Sol Levin, Trustee in Bankruptcy, take nothing by his counterclaim is reversed. The case seems to have been fully developed and, therefore, as directed by Rule 434, Vernon's Texas Rules of Civil Procedure, we now render the judgment the trial court should have rendered on the counterclaim; viz., that appellant recover judgment against appellee, as statutory penalty for usurious interest contracted for, charged and received by appellee, the sum of $21,500, with interest thereon from December 23, 1971 (the date

of the trial court's judgment) at six per cent per annum, together with his costs of suit. The remainder of the judgment is left undisturbed.

Reversed and rendered.

## ON MOTION FOR REHEARING

On motion for rehearing appellee insists that our judgment for $21,500 is excessive because it includes recovery by way of penalty of the whole principal sum of $18,000, though not all of such principal sum was repaid. Appellee argues that the unpaid principal is simply forfeited and becomes uncollectible under the terms of article 5069–1.06, and only the amount of principal actually paid may be recovered by way of penalty in addition to double the amount of usurious interest. This argument is well taken. The Lockheed check for $24,750 was $250 short of the amount expected. When that amount is applied as provided in the contract; i. e., $6,500 on the previous note for $10,000 and $500 for interest or handling charge, the balance remaining for application to the $18,000 principal was $17,750, leaving $250 unpaid. Statutory forfeiture of the entire principal of $18,000 is effected by the Trustee's recovery of the $17,750, plus cancellation of any obligation of Texas Tool Traders to repay the $250 balance.*

Appellee further argues that since it advanced to Texas Tool Traders $1,800 out of the proceeds of the Lockheed check, this amount of principal also was not repaid and should not now be recovered as a penalty. In other words, it is claimed that the Trustee's recovery is also excessive to the extent of $1,800 and that to hold otherwise is to permit double forfeiture in that amount. We do not agree. The record shows that appellee actually received the full amount of the Lockheed check and gave its own check for $1,800 to Texas Tool Traders in a separate though simultaneous transaction. The parties treated this $1,800 advance as a new loan rather than as an outstanding balance on the $18,000 loan. That new loan is not subject to forfeiture because of the usurious nature of the $18,000 loan, and by the same reasoning, the amount of principal repaid on the $18,000 loan cannot be considered as reduced by the $1,800 advance.

Appellee's motion for rehearing is granted to the extent that our judgment for $21,500 is reduced to $21,250. Otherwise the motion is overruled.

---

\* Since we hold that the $250 balance has not been repaid but is forfeited, it would seem that appellee's recovery on its main claim should be reduced by that amount. However, the trial court's judgment on the main claim, which is undisturbed by our reversal, does not appear to cover such a balance. The only recovery awarded, other than that for the transaction of March, 1970, is "the additional sum of the unpaid balance of $3,781.15 unpaid on the $10,000 note dated November 4, 1969." Consequently, we have no basis in this record to effect a forfeiture of the $250 balance.