**In re Michael J. VAUGHN.**

**No. CA3-78-970-F.**

United States District Court,
N. D. Texas,
Dallas Division.

Sept. 13, 1978.

On Rehearing Oct. 17, 1978.

See also, D.C., 462 F.Supp. 1052.

James C. Tubb, Vial, Hamilton, Koch, Tubb, Knox & Stadley, Dallas, Tex., Fred Hagan, Bracewell and Patterson, Houston, Tex., for plaintiffs; William D. Neary, Daniel C. Stewart, Van Oliver, Thompson, Knight, Simmons & Bullion, Dallas, Tex., of counsel.

Hilton H. Howell, Naman, Howell, Smith, Lee & Muldrow, Waco, Tex., for bankrupt.

Michael E. Rohde, Geary, Stahl, Koons, Rohde & Spencer, L. E. Creel, III, Creel, Atwood & Chapman, Dallas, Tex., for trustee.

## MEMORANDUM OPINION

ROBERT W. PORTER, District Judge.

In early 1976 Michael J. Vaughn and M.J.V., Inc. owed a note payable to the F.S.B. Liquidating Trust in the amount of $1,887,034.00. The note was secured by 30,300 shares of stock in the American Bank of Waco, Texas. Robert A. Mann and Walter J. Rusek, Trustee for certain trusts created for the three Mann children, controlled the F.S.B. Liquidating Trust and told Vaughn and M.J.V., Inc. that they would instruct the trust to refuse to extend the due date of said note and to foreclose on the collateral unless full payment was received immediately by the trust.

Mann and Rusek allegedly agreed to lend to Vaughn and M.J.V., Inc. $745,761.00 for a period of six months and one day on the condition that Vaughn and M.J.V., Inc. repay the $745,761.00 amount plus an additional $745,761.00 [*the transaction*]. Security for this alleged loan was an option of North American Coal Corporation to purchase 5,000 acres of land owned by Vaughn and M.J.V., Inc. (Vaughn and M.J.V., Inc. were allegedly to receive $2,684,174.00 if the option was exercised).

On June 11, 1976, Vaughn and M.J.V., Inc. brought a state court suit in Anderson

County, Texas alleging that the *transaction* involved a charge of interest that exceeded the maximum rate permitted by law, and requesting judgment in the amount of $2,834,239.00 or in the alternative for title and possession of the 5,000 acres of land and $150,065.00.[1] Vaughn and M.J.V., Inc. also requested recovery of attorney's fees in the amount of $350,000.00. Mann and Rusek apparently took the position in the state court suit that the alleged loan was in reality a sale, and therefore Vaughn and M.J.V., Inc. were not entitled to recover under the Texas Usury Laws, Art. 5069, Tex.Rev.Civ. Stat.

On December 9 and 10, 1976, Mann and Rusek took the depositions of Vaughn and his attorney, Hilton Howell. During these depositions Vaughn indicated that he had entered into the February and May, 1976 transactions with some thought of subsequently filing a usury suit against Mann and Rusek.[2] Hilton Howell indicated in his deposition, however, that he believed the transactions were sales, and not loans, and he participated in their preparation.

On July 14, 1977, the state court case was tried to a jury, but resulted in a mistrial. Subsequent to that date, Vaughn was adjudicated a bankrupt upon the petition of several of Vaughn's creditors, filed on July 18, 1977. Vaughn's trustee was then substituted as a party in the state court action.

Mann and Rusek assert that the import of Vaughn's testimony concerning the *transaction* did not become fully apparent until they had had an opportunity to review Vaughn's bankruptcy schedules as part of their preparation for the retrial of the state case on September 18, 1978. These schedules were not available to Mann and Rusek prior to the first state court trial because Vaughn had not been adjudicated a bankrupt at that time. The Bankruptcy Court received copies of Vaughn's bankruptcy schedules on October 25, 1977. Creditors do not receive copies of these schedules, Bankruptcy Rule 108, and Mann and Rusek alleged that it was only when they began to prepare for the retrial of the state court case that they received these schedules and discovered Vaughn's other usury cases.

The schedules disclose a number of usury lawsuits filed by Vaughn shortly before his creditors placed him in bankruptcy. Mann and Rusek surmised that once Vaughn's financial difficulties became severe in 1976 and early 1977, Vaughn decided to employ a unique financing plan by entering into transactions with third parties with the intention of later suing them under the Texas Usury Statute, hoping to keep the transaction proceeds and receive as a windfall under the statute double the amount of interest allegedly charged.

On May 22, 1978, Mann and Rusek filed a complaint under Bankruptcy Rule 701 et seq. requesting permission from the Bankruptcy Court to file a counterclaim in the State Court action. The automatic stay provisions of Bankruptcy Rule 401(a) ordinarily prevent, without prior bankruptcy court approval, the initiation or continuation of any cause of action against the bankrupt. Bankruptcy Rule 401(a). Violation of the automatic stay provision can result in imposition of severe penalties. *Fidelity Mortgage Investors v. Camelia Builders, Inc.*, 550 F.2d 47 (2nd Cir. 1976), cert.

---

1. The facts of the state court suit are summarized from Plaintiffs' fifth amended complaint in the District Court of Anderson County, Third Judicial District.

2. Question: "Do I understand what your testimony was earlier, and I want to be real certain that I understand this, that at the time you entered into the transaction . . . you had already come to the determination that you were going to file a lawsuit claiming usury against Walter Rusek and Robert Mann?"

Answer: "As I said earlier, that decision was made on Wednesday night in Houston after Mr. Mann reneged on the . . . (deal?) (word missing) that we made before I went to Cleveland."

Question: "And that was prior to—"

Answer: "It was prior to the time I got the money."

Question: "And I assume that it virtually goes without saying that you failed to disclose that?"

Answer: "I did not tell them I was going to sue them."

Deposition of Michael J. Vaughn, December 9, 10, 1976, pages 164 to 167.

den'd., 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977). The proposed counterclaim would allege that Vaughn had violated the Texas Deceptive Trade Practices Act, D.T.C.A. Bus. and Com. Code, § 17.-46(b)(12), and had committed tortuous fraud by entering into the transaction and other agreements with the intention of suing for usury as soon as the deals were completed in an effort to finance Vaughn's sagging fortunes.

On July 24, 1978, the Bankruptcy Court held that: (1) no complaint to determine dischargeability was before the Court, and therefore the Court assumed the claims and the proposed counterclaim were provable; (2) any recovery by Mann and Rusek on their counterclaim against Vaughn could not be offset under § 68 of the Bankruptcy Act against Vaughn's recovery against them on Vaughn's usury claim, and; (3) the Bankruptcy Court would not lift the Rule 401(a) stay to permit the filing of the counterclaim because Mann and Rusek had not shown either that the proposed counterclaim was a non-dischargeable debt or that the proposed counterclaim, as a provable debt, could be offset by any recovery by Vaughn in the state court usury suit. Mann and Rusek appealed and requested that this court permit an expedited appeal under Bankruptcy Rule 814. I granted the application for an expedited appeal.

### DISCHARGEABILITY UNDER SECTION 17

#### Time to File Section 17(c)(1) Complaint

Plaintiffs' complaint filed May 22, 1978 sought in the prayer for relief: (1) modifi-cation of the Rule 401(a) stay to permit the filing of Plaintiffs' proposed counterclaim in the state court action; (2) a determination by the Bankruptcy Court that by filing the complaint to lift the stay, Plaintiffs were not subjecting themselves to the summary jurisdiction of the Bankruptcy Court, and; (3) an order extending the date to file complaints for determination of the dischargeability of the bankrupt's debts under Section 17(a)(2), (4) and (8) until sixty days following such time as a judgment was rendered in the state court proceeding.[3] Plaintiffs, in the body of their complaint, requested that the Bankruptcy Court recognize that the claims asserted in the proposed counterclaim were not provable debts within the meaning of Section 63 of the Bankruptcy Act so as not to be dischargeable under Section 17 but then on page 5 of their complaint indicated that "(t)o the extent judgment is rendered in the state court action on the aforementioned counterclaim, your Plaintiffs herein intend subsequently to file an appropriate complaint with this Court to determine the dischargeability of such judgment debt."

Section 17(c)(2) of the Bankruptcy Act, 11 U.S.C. § 35(c)(2) provides that "(a) creditor who contends that his debt is not discharged under Clause (2), (4), or (8) of subdivision (a) of this section *must* file an application for a determination of dischargeability within the time fixed by the Court . . . and, unless an application is timely filed, the debt shall be discharged." (emphasis added) This section

---

**3.** Plaintiffs' complaint, May 22, 1978, page 6 (Plaintiff cites § 17(c)(2), (4) and (8) but this apparently is a typographical error as Plaintiffs' briefs and the rest of Plaintiffs' complaint demonstrates; in addition, there is no section 17(c)(8).

On page 3 of Plaintiffs' complaint, Plaintiffs requested that the court permit the filing of the counterclaim because: "(t)he actions which your plaintiffs herein contemplate taking against the bankrupt in the state court action are based upon theories of a tortous nature which your plaintiffs believe and contend do not represent "provable" debts within the meaning of § 63 of the Bankruptcy Act so as not to be dischargeable under § 17. Bankrupt-cy Rule 401(a) applies to automatically stay the commencement or continuation of only those causes of action against a bankrupt which are founded upon 'unsecured provable debts', other than those defined under § 17(a)(1), (5), (6) or (7). Although the plaintiffs herein feel very strongly that they are not bound by the Bankruptcy Rule 401(a) insofar as their contemplated counterclaims or similar actions involving tortous theories are concerned, they nevertheless want to exercise extreme caution by deferring to the court's discretion in this regard, praying for the entry of an order modifying the stay so as to permit the filing of and pursuing relief requested by such action."

also provides that no application need be filed for a debt excepted by Clause (8) if: (1) a right to trial by a jury exists and (2) a timely demand for a jury has been made or the creditor submits a signed statement of his intention to do so. Bankruptcy Act § 17(c)(2), 11 U.S.C. § 35(c)(2).

The Bankruptcy Court's determination that "(n)o Complaint to determine dischargeability is before me . . . (therefore) . . . for the limited purpose of determining whether the stay should be lifted, I assume provability" was a clearly erroneous conclusion of law for three reasons.[4] First, Plaintiff's complaint, read in its entirety, raised, albeit very ambiguously, the issue of dischargeability.[5] See footnote 3. Second, no application for a determination of dischargeability is necessary under § 17(a)(8) when a jury has been demanded, so the Bankruptcy Court could not use that requirement to avoid a determination of § 17(a)(8) dischargeability. Finally, assuming that the complaint did not adequately raise the issue of dischargeability of the proposed counterclaim, Plaintiff's complaint adequately raised the issue of extending the deadline for filing complaints to determine dischargeability, and the Bankruptcy Court was clearly erroneous in failing to exercise one of the following options: (1) grant the requested extension of time for filing complaints to sixty days after judgment was rendered in the state court action; (2) decide the Plaintiff's complaint in a reasonable period of time before July 19, 1978, the cutoff date for filing dischargeability complaints; or (3) permit Plaintiffs a reasonable extension of time to file a complaint to determine dischargeability.

*Dischargeability Complaint*

The requirement of filing a timely complaint to determine dischargeability has been strictly construed by the Courts. *Hubbard v. Hubbard,* 577 F.2d 98 (9th Cir. 1978) (objection filed February 5, 1975 untimely when deadline June 12, 1974); *Matter of Love,* 577 F.2d 344 (5th Cir. 1978) (untimely motion warrants dismissal of objections); *In Re Wooding,* 390 F.Supp. 451 (D.C.Kan.1974) (objection filed 11 days after deadline untimely where no request for extension of time and discharge already granted), though the Bankruptcy Court may grant extensions of time for filing applications for determination of dischargeability. Bankruptcy Act § 14(b)(1); 11 U.S.C. § 32(b)(1). Bankruptcy Rule 409(a)(2); *Matter of Love,* 577 F.2d 344 (5th Cir. 1978) (Bankruptcy Court's acceptance and hearing without objection on dischargeability constituted grant of extension of time); *In Re Jones,* 560 F.2d 775 (7th Cir. 1977); *In Re Solomon,* 506 F.2d 463 (7th Cir. 1974) (Referee may grant extension of time beyond Rule 409(a) 90 day period for filing of objections to discharge); *In Re Massa,* 133 F.2d 191 (2nd Cir. 1943); *Keenan v. Builders Appliances, Inc.,* 384 F.Supp. 14 (E.D.Wis.1974). If the petitioning creditor presents a timely motion to the Bankruptcy Court, the Bankruptcy Court should liberally construe the pleading if it attempts to raise the issue of dischargeability of a debt. *Hubbard v. Hubbard,* 577 F.2d 98 (9th Cir. 1978) (application to modify Rule 401 stay to permit Plaintiffs to sue bankrupt in state court read as objection to discharge); *In Re Jones,* 560 F.2d 775 (7th Cir. 1977); *In Re Vines,* 430 F.Supp. 465 (N.D.Ala.1977) (Bankruptcy Court is Court of Equity and should construe pleadings in the interest of substantial justice).

Plaintiffs primarily request in their complaint a modification of the Rule 401(a)

---

4. Bankruptcy Rule 810 provides that a district court shall accept the referee's findings of fact unless they are clearly erroneous . . ." (emphasis added) but the district court may reject the Bankruptcy Court's conclusions of law if they are erroneous. Bankruptcy Act § 2(10); 11 U.S.C. § 11(10). While I believe that the bankruptcy court's refusal to consider dischargeability was a conclusion of law, for the reasons stated I find that the determination was clearly erroneous.

5. An application for determination of dischargeability of a debt is raised in the Bankruptcy Court by filing a "complaint" to determine dischargeability. Bankruptcy Rule 409(a).

stay and relief from any suggestion of submission to Bankruptcy Court jurisdiction. It takes some digging to discover that Plaintiffs also request a modification of date of dischargeability and a determination of dischargeability. The complaint is certainly not a model of draftsmanship, but it does request the Bankruptcy Court to lift the Rule 401(a) stay because the proposed counterclaim is non-dischargeable.[6] "[(W)hen] construed as to do substantial justice", Bankruptcy Rule 708 [incorporating by reference Fed.R.Civ.Pro. 8(f)] the Bankruptcy Court was clearly erroneous in determining that Plaintiff's complaint did not include a request for determination of dischargeability.

The Plaintiffs submitted two documents to the Bankruptcy Court, a copy of the counterclaim filed by the Plaintiffs against M.J.V., Inc. and a summary of "causes of action" that the Plaintiffs intended to assert against Vaughn. Plaintiffs failed to provide the Bankruptcy Court with a copy of the actual counterclaim they intended to file in the state court proceeding, and without that document I cannot assess the dischargeability of Plaintiffs' claims under § 17(a)(2) and (4). The Court must review the actual document Plaintiffs seek to file in the state court action, or the court would be rendering an advisory opinion based on an outline of the claims. On remand, Plain-

tiffs shall submit to the Bankruptcy Court within two days of the entry of this order a copy of their proposed counterclaim and the Bankruptcy Court can at that time review Plaintiffs' assertion that the proposed counterclaim is not provable, not dischargeable (or, possibly, not allowable), or postpone that decision until a later time. *Wood v. Fiedler,* 548 F.2d 216 (8th Cir. 1977); *In Re Lebow,* 397 F.Supp. 487 (S.D.N.Y.1975).

*Discharge under § 17(a)(8)*

Section 17(a)(8) provides that liabilities for "willful and malicious injuries to the person or property of another other than conversion . . ." are not dischargeable in bankruptcy.[7] The exact nature of claims that a party considers dischargeable, when those claims have not been reduced to judgment, can only be determined by initially reviewing a copy of the actual pleading. Unless there are disputed issues of material fact, a court is not required to hold an evidentiary hearing or a "trial" and, in appropriate cases, may determine dischargeability from only a review of the pleadings. *In Re Swope,* 466 F.2d 936, 938 (7th Cir. 1972), cert. den'd., 409 U.S. 1114, 93 S.Ct. 929, 34 L.Ed.2d 697 (1973); *In Re Crimmins,* 406 F.Supp. 282 (S.D.N.Y. 1975). Where a judgment is involved, the Court may consider the recitals of the judg-

---

**6.** See footnote 3 for an excerpt from the complaint. Rule 401(a) stays creditors from pursuing claims on provable debts (with four exceptions) 12 Collier Bankruptcy § 401.3(1), and a § 17 discharge releases the bankrupt from only provable debts, so a Rule 401(a) stay would not apply to a non-dischargeable debt but Plaintiffs, while believing the proposed counterclaim to be non-dischargeable, requested a lifting of the stay in the exercise of extreme caution. See *Fidelity Mortgage Investors v. Camelia Builders, Inc.,* 550 F.2d 47 (2nd Cir. 1966), cert. den'd., 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1973) (violation of automatic stay provisions can result of imposition of severe penalties). For a more complete discussion of the relation between § 63 and § 17 of the Bankruptcy Act, see *Jordan v. Independent Energy Corp.,* 446 F.Supp. 516, 522, fn. 7 (N.D.Tex. 1978).

**7.** A complaint to determine dischargeability is unnecessary under § 17(a)(8) if a right to trial by jury exists and either has been or will be

demanded. Bankruptcy Act § 17(c)(2); 11 U.S.C. § 35(c)(2). Texas permits a party to a civil action to file a jury demand not less than ten days in advance of trial. Tex.R.Civ.Pro. 216. None of the parties have submitted a signed statement of an intention to demand a jury. The briefs filed with the Bankruptcy Court and this court as well as the complaint to modify the automatic stay indicate that the original trial of the state court case, which ended in a mistrial, was tried to a jury and there are references in the original counterclaim of Walter J. Rusek (page 1 of Exhibit A of the Trustee's answer to the complaint to modify the automatic stay) and in briefs that a jury demand has been made, but there is no conclusive evidence in the record that the state court case will be tried to a jury.

I assume that a proper jury demand has been or will be made before trial of the state court case, but the Bankruptcy Court can resolve this question, if necessary, on remand.

ment, the allegations in the complaint and the entire record in determining whether a debt is dischargeable under § 17 of the Bankruptcy Act. *In Re Jarreau*, 422 F.Supp. 947 (M.D.La.1976); *Fierman v. Lazarus*, 361 F.Supp. 477 (E.D.Pa.1973); *Chernick v. U. S.*, 492 F.2d 1349 (7th Cir. 1974); *National Homes Corp. v. Lester Industries, Inc.*, 336 F.Supp. 644 (W.D.Va.1972).

Plaintiffs have not submitted to the bankruptcy court a copy of the actual pleading they intend to file in the state court; only an outline, admittedly an extensive outline of the claims, is in the record. On remand Plaintiffs shall submit to the bankruptcy court within two days of the entry of this order a copy of their proposed counterclaim and the Bankruptcy Court can at that time review Plaintiffs' assertion that the proposed counterclaim is not provable, not dischargeable (or possibly, not allowable) or postpone that decision until a later time.

*Extension of Dischargeability Complaint Deadline*

On May 22nd, 1978, Plaintiffs filed their complaint, which in part requested an extension of time for determining dischargeability until sixty days following the entry of judgment in the state court proceeding. At that time the deadline for filing dischargeability complaints was June 19, 1978, and this time was later extended to July 19, 1978. The Bankruptcy Court rendered its decision on Plaintiff's complaint on July 24, 1978, expressly overruling Plaintiff's motion to modify the Rule 401(a) automatic stay, rejecting any interpretation of Plaintiff's complaint as a dischargeability complaint, and implicitly overruling Plaintiff's request for an extension of time. The Bankruptcy Court's order, coming five days after the time for filing dischargeability complaints, precluded Plaintiffs from filing a timely dischargeability complaint, though their timely filed motion to extend the time for filing had been pending for nearly two months before the Bankruptcy Court reached its decision.

A grant or denial of an extension of time to file dischargeability complaint is within the discretion of the Bankruptcy Court, and the Court did not err in its implicit (by failing to rule) denial of the motion to extend the time for filing to sixty days after the entry of judgment in the state court case. *Matter of Love*, 577 F.2d 344 (5th Cir. 1978); *In Re Jones*, 560 F.2d 775 (7th Cir. 1977); *In Re Solomon*, 506 F.2d 463 (7th Cir. 1974). It was clearly erroneous, however, for the Bankruptcy Court to completely overrule a motion for extension of time to file a complaint under § 17 when the motion was filed two months before the deadline and the Court's decision was entered five days after the deadline passed. Bankruptcy Rule 409(a). The Bankruptcy Court should at least have granted the Plaintiffs a reasonable extension of time from July 24, 1978 to enable them to file a dischargeability complaint.

*Right to Set Off Under § 68*

The Bankruptcy Court assumed that the Plaintiff's claims and the proposed counterclaim represented provable debts, and concluded that the court was required to continue the automatic stay and thereby limit the parties in their prosecution of the state court action. Since the plaintiffs have not furnished the Bankruptcy Court with a copy of their proposed counterclaim this court is unable to make a definitive ruling on any asserted right of offset under § 68 of the Bankruptcy Act. Assuming that the Plaintiffs present a proposed counterclaim to the Bankruptcy Court containing causes of action substantially similar to those outlined in the Plaintiffs' counterclaim against M.J.V., Inc. and the Plaintiffs' "causes of action" attached their letter of July 11, 1978 to the Bankruptcy Court, and assuming that those claims are provable and dischargeable (as was assumed by the Bankruptcy Court), I find that the Bankruptcy Court's determination that it was required to continue the automatic stay and thereby limit the parties in their prosecution of the state court action was not an erroneous or clearly erroneous determination, and on this point the Bankruptcy Court's decision, at-

tached as Appendix "A" to this opinion, is affirmed. I remanded this case to the Bankruptcy Court, however, for disposition of Plaintiffs' dischargeability complaint, and the Bankruptcy Court's determination to assume provability may become moot should the Bankruptcy Court decide that the causes of action asserted by the Plaintiffs are not dischargeable in bankruptcy. On remand, the Bankruptcy Court may also want to consider Plaintiffs' arguments that Plaintiffs' causes of action under the Texas Deceptive Trade Practices Act, statutory fraud, and common law fraud are valid defenses (rather than counterclaims) under § 70(a)(6) if it becomes necessary, after a review of the Plaintiffs' proposed counterclaim, to reach this contention.

The judgment of the Bankruptcy Court is affirmed in part, reversed in part, and remanded to the Bankruptcy Court for further proceedings as specified in this opinion.

## APPENDIX A

The attorney for the Trustee resists such Complaint contending that these Counter Claims are not properly subject to offset under Sec. 68 of the Bankruptcy Act, that to permit the filing of the Counter Claim would delay the quick trial of the State Court action, hence, the administration of the bankruptcy case, that the Plaintiffs should present any claims that they may have against the bankrupt in this Court.

Any consideration of an issue such as this, where the State Court has an extensive background in the case, should begin with a great reluctance on the part of the Bankruptcy Court to interfere in the trial of the issues before that State Court. Particularly is that so where, as here, Mann and Rusek may defensively have to explore the "negotiations of the parties" to ascertain the "dominant purpose and intent of the parties embodied in the contract" as *Tanner v. Ferguson,* 561 S.W.2d 777, 781 (Tex.1977), indicates they may do. This would seem to me to mean some limited subjective inquiry is permitted to determine whether the transaction was in fact a sale or in fact a loan, and may involve, indirectly, some of the Counter Claim theories being asserted by Plaintiffs.

Yet, this is the rare case where a Bankruptcy Court is required to continue the automatic stay and thereby limit the parties in their prosecution of the State Court action. I reach this difficult conclusion because the cases of *McCollum v. Hamilton National Bank of Chattanooga,* 303 U.S. 245, 58 S.Ct. 568, 82 L.Ed. 819 (1938); *Citizens Bridge Co. v. Guerra,* 152 Tex. 361, 258 S.W.2d 64 (1953); and, *Texas Tool Traders v. W. E. Grace Manufacturing Company,* 488 S.W.2d 498 (Tex.Civ.App.1972) establish beyond any question the following principles:

(1) Any right to set-off which Mann and Rusek may assert would arise solely because of Sec. 68 of the Bankruptcy Act, and not because of any State rule or statute. *McCollum, Citizens Bridge* and *Texas Tool Traders, supra.*

(2) To be subject to set-off under Sec. 68, the debts must be "mutual", and this means owed by each side in the same relative capacity. "Similarity" is not an element of mutuality. 4 *Collier on Bankruptcy, Sec. 68.04.*

(3) The following reasons are assigned by the Courts for disallowing off-set of the basic debt (contractual or otherwise) against the usurious penalty debt, *i. e.* for concluding the debts are not "mutual":

(a) "The liability [for usury] can only be enforced in an action 'brought specially and exclusively for that purpose—where the sole issue is the guilt or innocence of the accused, without the presence of any extraneous facts which might confuse the case'." *McCollum, supra,* 303 U.S. p. 247, 58 S.Ct. p. 570. Obviously, if the Counter Claim theories here sought to be asserted are allowed, the "sole issue" will not be the guilt or innocence of Mann and Rusek, but the guilt or innocence of Vaughn, clearly an "extraneous fact" which would "confuse the case".

(b) The right of the bankruptcy Trustee "to recover the penalty does not depend on the payment" of debts owed by the bankrupt to the guilty party. *Citizens Bridge, supra,* 258 S.W.2d p. 71.

(c) The claim sought to be off-set must be against the bankruptcy Trustee, not against the bankrupt, to justify resort to Sec. 68. *Texas Tool Traders, supra,* 488 S.W.2d p. 503.

The Plaintiffs seek to avoid these fatal three cases by arguing they are limited in their prohibitions to the off-setting of "contractual" claims against the bankrupt, such as the principal due under the notes of *McCollum* and *Citizens Bridge*. Even if we overlook the fact that *Texas Tool Traders* did involve an attempt to offset a loan based on false and fraudulent representations, plus exemplary damages found by a jury, I find no cogent reason for saying the Courts intend to limit the right of off-set to contractual debts, as distinguished from tortious ones. On the contrary, if I were writing on a fresh slate without these three cases to guide me, I would be more inclined to say contractual debts should be subject more readily to off-set since they involve less "extraneous facts" and would be less likely to divert the fact finder in his determination of the guilt or innocence of the accused.

An additional reason for staying the assertion of these Counter Claims in the State Court is that Plaintiffs, in their briefs, bring to my attention the fact that the bankrupt has sued not only Mann and Rusek on usury theories, but also four other lenders "among others". (Brief of Plaintiffs dated 6–26–78, pages 2 and 3). If, as Plaintiffs contend, this was all part of one great design to sue his various lenders on usury claims and thereby make himself whole, the path of judicial efficiency would appear to be first to determine the provability, dischargeability, allowability, and capacity of this single Court to afford relief rather than countenance a situation which would force the Trustee to try multiple counter actions based on this theory throughout the State at the expense of the creditors whom he represents.

## ON REHEARING

On September 25, 1978 Mann and Rusek filed a Motion to Alter or Amend Judgment, requesting this court's review of a final draft if the counterclaim and a decision on the "provability" of the claims in the counterclaim. On September 14, 1978, one day after this court's decision on the Mann/Rusek expedited appeal, Mann obtained a continuance of the state court suit until January, 1979. Mann and Rusek contend that this court did not have a full opportunity, due to the pressure of the upcoming trial date, to give consideration to all of the issues presented in the expedited appeal. They also remain concerned that "remand will only produce another adverse decision by the Bankruptcy Court, leading to a second appeal to this Court in November or December, with the same time pressures as existed with this appeal." Mann/Rusek Motion p. 5.

*Timeliness of Motion*

This court's opinion was entered on September 13, 1978 and Mann/Rusek filed their Motion to Alter or Amend Judgment (which I interpret to be a Motion for Rehearing) on September 25, 1978. The Trustee argues that the Motion for Rehearing was untimely.

A motion for rehearing, unless otherwise provided by local rule or court order, may be filed within 10 days after entry of judgment of the district court in a bankruptcy case. Bankruptcy Rule 812. Rule 6(a) of the Federal Rules of Civil Procedure applies in computing the 10 period of time for filing a motion for rehearing in a bankruptcy appeal. Bankruptcy Rule 906(a). Under Rule 6(a), Fed.R.Civ.Pro., the day the court entered its opinion and judgment from which the 10 day period of time begins to run is not included in the computation. The last day of the 10 day period of time to file a motion for rehearing in a bankruptcy appeal is included in the computation unless it is a Saturday, a Sun-

day, or a legal holiday, in which event the 10 day period runs until the end of the next day which is not a Saturday, a Sunday or a legal holiday. Rule 6(a), Fed.R.Civ.Pro.; Bankruptcy Rule 906(a).

■ A motion for rehearing of this court's opinion/judgment filed September 13, 1978 in a bankruptcy appeal must be filed by September 23, 1978, but because September 23, 1978 falls on a Saturday, the motion for rehearing is timely if filed on the following Monday, September 25, 1978. Bankruptcy Rule 812; Bankruptcy Rule 906; Rule 6(a), Fed.R.Civ.Pro.; see *In Re Atlas Sewing Centers, Inc.,* 461 F.2d 1002 (5th Cir. 1972).[1]

*Bankruptcy Rule 810*

Mann/Rusek move this court to amend its judgment, permit Mann to submit a final draft of the counterclaim to the court for this court's consideration, and render a decision on the "provability" of the counterclaim. Mann/Rusek view this court's opinion and judgment as remanding the case to the Bankruptcy Court for further consideration of the issues raised in the appeal because: (1) Mann/Rusek failed to submit a final draft of their proposed counterclaim to the Bankruptcy Court, thus making any decision by this court on the "provability" of the proposed counterclaim only advisory; and (2) the Bankruptcy Court erroneously failed to rule on the "dischargeability" of the proposed Mann/Rusek counterclaim.

■ Bankruptcy Rule 810 provides that "(u)pon an appeal the District Court may affirm, modify, or reverse a referee's judgment or order, or remand with instructions for further proceedings." This rule is a revision of General Order 47, but it does not retain a provision in that Order permitting receipt of additional evidence by a district judge in connection with a review of a referee's order or findings. A federal district judge may not consider additional evidence when reviewing the findings of a

bankruptcy judge under Bankruptcy Rule 810; disposition of the case must be limited to affirmance, modification, reversal or remand. Bankruptcy Rule 810; 2a Collier, *Bankruptcy,* ¶ 39.16 at 1485 (1978). Bankruptcy decisions which permit the receipt of additional evidence by a district judge, based upon the authority of General Order 47, are overruled by Bankruptcy Rule 810. See, e. g., *In Re Schoenburg,* 279 F.2d 806 (5th Cir. 1960), *cert. denied,* 364 U.S. 923, 81 S.Ct. 290, 5 L.Ed.2d 262 (1960); *In Re Kaufhold,* 256 F.2d 181 (3rd Cir. 1958); *In Re J. L. N. Distributors, Inc.,* 330 F.2d 815 (2nd Cir. 1964).

■ A district court may, in the interest of expediting decision or for other good cause, suspend the requirements or provisions of a number of the bankruptcy appellate procedures. Bankruptcy Rule 814. The district court may not modify in any manner the provisions of Bankruptcy Rule 810, and therefore this court may not accept or consider the final draft of the counterclaim that Mann/Rusek request the court to consider under Bankruptcy Rule 810.

*Consideration Of Additional Evidence: Bankruptcy Rule 102(b)*

A district judge may act in a bankruptcy case, as provided in the Bankruptcy Rules, in only a few limited circumstances: (1) withdrawal of the bankruptcy case from the referee, Bankruptcy Rule 102(b); (2) occurrence of a vacancy in the office of referee, Bankruptcy Act § 43(c), 11 U.S.C. § 71; (3) demand for a jury trial by a district judge, Bankruptcy Rule 115(b); (4) placement on the jury calendar of the district court of an issue, Bankruptcy Rule 409(c); (5) certification that contempt has been committed, Bankruptcy Rule 920; (6) request for injunctive relief against another court, Bankruptcy Act § 2(a)(15), 11 U.S.C. § 11(a)(15); and (7) review of a judgment of a referee reviewed on appeal, Bankrupt-

---

**1.** Under the provisions of Bankruptcy Rule 810 and under Bankruptcy Rule 814 the district court may, upon order, extend the time for filing a motion for rehearing, and, although the

provisions of Bankruptcy Rule 906 make it unnecessary, I hereby extend the time for filing a motion for rehearing in this case to September 25, 1978.

cy Act § 2(a)(10), 11 U.S.C. § 11(a)(10); Bankruptcy Act § 39(c), 11 U.S.C. § 67.

■ Only two of the provisions cited above could apply in this case: review of a judgment of a referee on appeal, or withdrawal of the bankruptcy case from the referee. The district judge's review powers do not extend to consideration of additional evidence on appeal. Bankruptcy Rule 810. A district judge may, however, at any time for the convenience of the parties or other cause withdraw a case in whole or in part from a referee and act himself. Bankruptcy Rule 102(b). Under this provision of the Bankruptcy Rules this court has the authority, which it can exercise in its discretion, to withdraw this case from the Bankruptcy Court for the limited purpose of considering the "dischargeability" and "provability" of the Mann/Rusek counterclaim after submission of the final draft of the counterclaim to this court. Bankruptcy Rule 102(b).

Mann/Rusek contend that this court should consider their final draft of a counterclaim, and render a new decision because it is likely the Bankruptcy Court will render an adverse decision which will result in another time consuming appeal, this court was unable to consider all of the issues involved in the appeal because the appeal was expedited, judicial economy would be served by this procedure, and the Bankruptcy Court is not sufficiently familiar with the appropriate Texas law and its subtleties.

Mann/Rusek misconstrue this court's earlier opinion when they suggest that this court did not have enough time to fully consider all of the issues. First, Mann/Rusek requested an expedited hearing and decision. Second, the court fully considered all of the issues presented, but was unable to reach any final determination on the issues of "dischargeability" and "provability" because Mann/Rusek failed to submit to the Bankruptcy Court a final draft of their proposed counterclaim. Any lack of "full consideration" of the issues raised by Mann/Rusek was due to their failure to properly prepare an appellate record, and not to this court's lack of time to consider those issues.

■ Mann/Rusek also underestimate the capabilities of the Bankruptcy Court when they suggest that the Bankruptcy Court is unable to perceive the subtleties of Texas law. There are many subtleties of Texas law that are probably better off undiscovered, but a Bankruptcy Court is just as capable as a district court in making those state law determinations. The Bankruptcy Court must deal with state law on a daily basis, and may, in fact, if such things can be measured, be more qualified to rule in this area than a district court.

Mann/Rusek appear to be forum shopping when they suggest that "remand will only produce another adverse decision by the Bankruptcy Court". This record does not support any finding by this court that it would be appropriate to transfer this case to another referee or to this court because the referee has prejudged the issue to be determined, Bankruptcy Rule 102; In Re Carburetor Corp., 91 F.Supp. 782 (D.C.N.Y. 1950); in fact, in reviewing the record on appeal, there is no evidence to that effect. I reject any attempt by Mann/Rusek to select a forum that they feel would render a decision in their favor.

Mann/Rusek's most persuasive argument for having this court withdraw the "dischargeability"/"provability" decision from the Bankruptcy Court is that no matter how the Bankruptcy Court decides the question, and as now framed it is a question of law, the other party will in all likelihood appeal, and this court will be faced with a situation similar to that which occurred in August and September of 1978. This court, however, gave the Bankruptcy Court an option on remand, in addition to the option of facing directly the question of "dischargeability"/"provability" of the final draft of the counterclaim. This option included granting Mann/Rusek's requested extension of time for filing dischargeability complaints (or the Mann/Rusek dischargeability complaint) until 60 days after judgment was rendered in the state court action and postponing the "dischargeability"/"provability" decision until a later

time. Thus appeal of the legal question involving the issues of provability and dischargeability could be avoided if the Bankruptcy Court chose to grant Mann/Rusek's request that the time for filing dischargeability complaints be extended.

*Certification to District Court*

■ After full consideration of the arguments for and against assuming jurisdiction over this dispute, I have concluded that there is no compelling necessity for this court to withdraw the "dischargeability"/"provability" decision from the Bankruptcy Court, although, if the Bankruptcy Court selects the option of deciding that issue, this Court is persuaded that withdrawal would probably be in the interest of judicial economy.

The court has not eliminated the possibility that it will consider this issue, and withdraw it from the Bankruptcy Court's consideration. The court has concluded that the Bankruptcy Court is in a better position to decide whether or not the time for filing dischargeability complaints should be extended (a decision which might eliminate any need for withdrawal of this case to the district court), or whether that question and/or the question of "dischargeability"/"provability" should be decided, in the interest of judicial economy, by the district court. If the Bankruptcy Court concludes that it would be in the interest of judicial economy (or for any other appropriate reason) to have this case withdrawn to the district court, the Bankruptcy Court may advise this court to that effect, and this court will promptly consider those issues, relying on this court's earlier opinion of September 13, 1978. If the Bankruptcy Court concludes that there is no persuasive reason for permitting withdrawal to the district court, then this court will not withdraw the issues on remand. This court is hopeful that the Bankruptcy Court can make a speedy determination of this preliminary question so that it, or this court, can move forward with consideration of the merits of the case.

Therefore, until the Court has an opportunity to review the Bankruptcy Court's determination on the issue of withdrawal, the Motion to Alter or Amend Judgment (which I interpret as a Motion for Rehearing) is Overruled, subject to reconsideration after the Court has reviewed the Bankruptcy Court's decision on withdrawal.

It is so Ordered.